GRADY HOLLAND SANFORD, Appellant, v. BER-
TONIA HOLLAND et al.

**Division One, December 30, 1918.**

1. **WILL CONTEST: Peremptory Instruction.** After formal proof of
the execution of a will and of the sanity of the testator at the
time, the weight of the evidence is against the contestant, and it
becomes necessary, in order to obtain a submission of the issues
of testamentary incapacity and undue influence to the jury, to
adduce some substantial evidence tending to support those allega-
tions, and if he totally fail to produce such evidence it is not error
for the court to direct a verdict in favor of proponents.

2. ———: **Testamentary Capacity: Tests.** A testator with mind
enough to understand the ordinary affairs of life, the kind and ex-
tent of his property and who are the natural objects of his bounty,
and that he is giving his property to the devisees mentioned in
his will in the manner therein stated, is capable of making a will.

3. ———: **Questions for Court and Jury.** The contest of a will is a
legal and statutory action. Whether or not there is substantial
evidence to support the grounds of contest is primarily a question
of law for the court, and if by the court answered in the nega-
tive, nothing remains to be tried by the jury, and an instruction
directing a verdict for the proponents is proper; if answered in
the negative, the case must go to the jury, whose province it is to
determine the credibility of the witnesses, the effect of the testi-
mony and the force of legally allowable inferences.

4. ———: **Undue Influence: Wifely Activity.** Acts of affection and
interest or business' activity by a wife during testator's last sick-
ness, all distinctly within the scope of wifely duty, do not tend
to establish undue influence on her part.

Appeal from Greene Circuit Court.—*Hon. Guy D.
Kirby,* Judge.

AFFIRMED.

*T. J. Delaney* and *Neville & Gorman* for appellant.

(1) Courts while solicitous to maintain the paper
writing as the will of an alleged testator against the
complainants of disappointed expectations, should be

equally solicitous to prevent imposition either through testamentary incapacity or by means of undue influence. In many cases, we respectfully submit courts have placed too much emphasis on the abstract right of one to dispose of his own, and made cases turn on such right. Before such rule is practically invoked and applied, the court should determine, 1st, the question of testamentary capacity, and, 2nd, the absence of undue influence. Unless and until these questions are solicitiously considered and satisfactorily disposed of, or unless an alleged inequality in distribution is urged as the chief and only grounds for contest, the right to do as one pleases with his own is and should be secondary. (2) Regardless of the evidence or of the weight thereof, the court erred in giving peremptory instructions establishing the will on the issue of testamentary incapacity. The burden was upon the proponents not only to show a due and formal execution complying with the forms prescribed, but to show testamentary capacity at time of such execution. The question of the sufficiency of the evidence was for the jury who might credit or discredit the testimony offered. The court cannot usurp the function of a jury on a matter requiring a finding that a given fact is established. The court may properly declare that given evidence adduced is not sufficient to establish a certain fact, whether alleged by plaintiff as his cause of action, or by defendant in his defense. But the court has no authority to declare that a fact affirmed is sustained by the evidence, even if there be no counter witnesses or strictly counter testimony. The court may declare a given cause of action not proven, but can never declare it is proven. The court may declare a given defense not sustained by evidence, but can never say that it is established. This distinction is clear on principle and sustained by authority. Gammon v. Laclede Co., 145 Mo. 502; cited in Mowry v. Norman, 204 Mo. 191; James v. Assn., 148 Mo. 1, 111 Mo. App. 540; Williams v. Railroad, 257 Mo. 112. (3) The paper in writing was not attested by two competent

witnesses as required by law. One witness, Arch A. McGregor, was not a competent witness under the evidence which shows that he was at the time interested in the subject-matter of the will. He, or his company of which he was president and chief owner, was at the time of such attestation and for a long period of time theretofore had been, a tenant of deceased of part of the real estate disposed of by said alleged will. It was shown (plaintiff offered to show and evidence was excluded, which is assigned for error) that the rental charged was less than reasonable, much less than current rentals on business property near the Public Square. He or his company was at said time and for many years prior to signing of said paper in writing have been the owner of a tract of ground about 100 by 117 feet immediately adjoining and used in connection with the tenant-occupied property. He and his company were unsecured creditors at the time of Charles Holland, the son of the deceased, a chief beneficiary under said paper in writing. For these reasons he was vitally interested in the question, "Who is to be the landlord?" (4) Even if such interests and relationship did not disqualify him as a witness these matters and others and all the circumstances in evidence certainly affect his credibility and were matters for the jury in determining the weight of his evidence. It was for the jury to say whether or not his testimony and the testimony of Dr. Ralston were sufficient. The jury had a right to weigh such testimony and had a right to declare under all the circumstances a lack of testamentary capacity or that undue influence was exerted. And this even on the theory that the court had the right to act peremptorily on the question. Besides in this case, the personal and family physician was the other attesting witness. A due regard for the position in which a physician thereby places himself should make him pause. Where such physician is used as an attesting witness it is an ear mark against proponents. Turner v. Andrews, 260 Mo. 1. In this connection, the court should not lose sight of the other ear mark, the

badge of fraud, the certificate of capacity given by the physician. Major v. Kidd, 261 Mo. 607; Mowry v. Norman, 204 Mo. 173, 223 Mo. 463. (5) Whether it be considered on the question of testamentary capacity and whether arising on the evidence adduced by the proponent alone or on the evidence of the whole case, or whether it be considered on the issue of undue influence, the failure of the members of the family to testify, justify such inferences as not only warrant but demand submission of such issues to the jury. Mayberry v. McClurg, 74 Mo. 375; Leaper v. Bates, 85 Mo. 224; Levett v. LaForce, 71 Mo. 354; Massey v. Young, 73 Mo. 273; Cass County v. Greene County, 66 Mo. 512; Baldwin v. Whitcomb, 71 Mo. 658; Eck v. Hacker, 58 Mo. 235; Bent v. Lewis, 85 Mo. 452. (6) On all the evidence the contestant was entitled to the opinion of the jury on the question of testamentary capacity. So also on all the evidence the contestant is entitled to the finding of the jury on the question of undue influence. Major v. Kidd, 261 Mo. 607; Schriebel v. Schriebel, 261 Mo. 706; Turner v. Anderson, 260 Mo. 1; Andrew v. Linebaugh, 260 Mo. 625; Grundmann v. Wilde, 255 Mo. 109; Byrne v. Fulkerson, 254 Mo. 97; Wendling v. Bowden, 252 Mo. 647; Bensberg v. University, 251 Mo. 641; Byrne v. Byrne, 250 Mo. 632; Naylor v. McRue, 248 Mo. 423; Goodfellow v. Shannon, 197 Mo. 271; Crum v. Crum, 231 Mo. 626; Carl v. Gabel, 120 Mo. 297; Gay v. Gillilan, 92 Mo. 250; Dausman v. Rankin, 189 Mo. 677; Buford v. Gruber, 223 Mo. 231; Halton v. Cochran, 208 Mo. 314; Mowry v. Norman, 209 Mo. 173, 223 Mo. 463; Roberts v. Bartlett, 190 Mo. 680; Teckenbrock case, 209 Mo. 533; Cash v. Lust, 142 Mo. 630. (7) Mr. Holland spent weeks in the preparation of the February will; conferred about it on several occasions; read it; had it read in presence of wife and even after this dictated a slight change. And yet we find him in June declaring to McGregor that he did not understand the former will, did not realize what was in it; but that he knew the contents of the one about to be executed when there

is no evidence when it was prepared or that Mr. Holland ever read it or even had it read to him. Those who could throw light on this, the wife, family, the scrivener of the will, maintain absolute silence. Old age, sickness, infirmities are to be considered in passing upon both questions of capacity and undue influence. Schriebel v. Schriebel, 261 Mo. 706. Discrimination and inequality in dispositions along with other facts are entitled to weight. Schriebel v. Schriebel, 261 Mo. 706. There was substantial evidence of both mental incapacity and undue influence. Therefore a peremptory instruction was error. Turner v. Anderson, 260 Mo. 1; Goodfellow v. Shannon, 197 Mo. 271; Crum v. Crum, 231 Mo. 626; Naylor v. McRue, 248 Mo. 423; Major v. Kidd, 261 Mo. 607. There is no question from this record that towards the last and especially after the return of Mr. Holland from Claremore that Mrs. Holland, Charles Holland and Arch McGregor had an undue influence over the mind of Mr. Holland. This being shown, and from the record this conclusion is irresistible, it follows that the burden is upon the proponents to show that they did not exercise or exert such influence. This was not done. Mrs. Holland and Charles did not submit to a searching of conscience. Maddox v. Maddox, 114 Mo. 49; Gay v. Gillilan, 92 Mo. 261; Gravius, Admr. v. Williams, 44 Mo. 465; Harvey v. Sullens, 46 Mo. 147; Bradford v. Blossom, 190 Mo. 143. In reality every case in this court in which a will has been sustained either by jury or on peremptory instructions, emphasis has always been placed by the court on the proven fact that the paper writing in dispute was prepared by the testator or the terms were directed by him, or that same was read to him; and this by testimony other than the mere declaration by testator of such fact. In this case, the scene opens with the manual signing. Everything that preceded is hidden, concealed or suppressed. The only glimpses we have in this case of one of the most momentous acts in a man's life, the execution of a will disposing of a large estate and in which act the future of

all his loved ones is involved, is a little jollity about the spelling of testator's name and the character of handwriting. In Roberts v. Bartlett, 190 Mo. 680, comment is made in the decision on the absence of testimony showing when and where will was prepared. (8) The burden of proof, it is true, is upon the plaintiff, contestant, to show the exercise of undue influence; but as stated and shown, if an undue influence is shown to exist, it is for proponents to show that such influence was not exercised. Again if it be shown that a fiduciary relation existed, then the burden shifts and the proponents must show affirmatively that undue influence was not exercised and such issue must be submitted to the jury. A fiduciary relation is shown in this case. Byrne v. Byrne, 250 Mo. 632; Gay v. Gillilan, 92 Mo. 264. Where such relation is shown to exist, the law even indulges in presumption of undue influence. Campbell case, 162 Mo. 644; Hegney case, 126 Mo. 627-28; Roberts case, 190 Mo. 702; Bradford case, 190 Mo. 143; Dausman case, 189 Mo. 708; Maddox case, 114 Mo. 40. All cited in Mowry v. Norman, 204 Mo. 173.

*W. D. Tatlow*, and *Mann, Todd & Mann* for respondents.

(1) A will cannot be impeached either on the ground of the mental incapacity of the deceased or undue influence over his mind by declarations of the deceased made either before or after the execution of the will as to his lack of mental capacity or as to his being unduly influenced. The same is true as to the declarations of the devisees or legatees that the testator did not have mental capacity at the time of making the will, whether made before or after the execution of the will, or declarations to the effect that they had unduly influenced him or intended to do so. Such declarations are hearsay evidence. The declarations of the testator when made at the time of the execution of the will so as to be a part of the *res gestae* are, of course, competent evidence, as in all other cases. Schierbaum v. Schemme, 157 Mo. 1; Meier v. Butcher, 197 Mo. 68;

Teckenbrock v. McLaughlin, 209 Mo. 550; Crowan. v. Crowan, 172 Mo. 703; Hayes v. Hayes, 242 Mo. 155; Rule v. Maupin, 84 Mo. 587; Giboney v. Foster, 230 Mo. 106; Walton v. Kendrick, 122 Mo. 504; Tingley v. Cowgill, 48 Mo. 298; Seibert v. Hatcher, 205 Mo. 97; Paget v. Pence, 178 S. W. 205. (2) All that part of the evidence that refers to matters that took place after the death of the deceased, cannot be considered for the purpose of determining whether the case should have been submitted to the jury. It either was or was not the will of the deceased at the time of his death. If it was his will then it is his will now, notwithstanding the feelings of the parties or what accusations any of the devisees might have made against the father of the contestant. Heinbach v. Heinbach, 262 Mo. 13. (3) The trial court by sustaining the demurrer expurgated all of the alleged declarations of Mrs. Holland, Charley Holland and Clifford Jarrett and all that part of the evidence relating to matters that transpired after the death of the deceased, which left the record absolutely devoid of any substantial evidence upon which the jury could base a verdict that the deceased lacked mental capacity on the 17th day of June, 1913. Price v. Railroad Co., 72 Mo. 414; Kane v. Railroad Co., 251 Mo. 44. In a will case, at least, after all of the evidence is in, it is for the court to say as a matter of law whether there is any substantial evidence upon which the jury might base a verdict that the deceased did not possess testamentary capacity, or that the will was procured by undue influence. Jackson v. Hardin, 83 Mo. 176; McFaddin v. Catron, 138 Mo. 227; Von de Veld v. Judy, 143 Mo. 363; Fulbright v. Perry, 145 Mo. 432; Word v. Carpenter, 166 Mo. 488; Crossan v. Crossan, 169 · Mo. 631; Homan v. Homan, 180 Mo. 685; Hughes v. Raider, 183 Mo. 630; Story v. Story, 188 Mo. 110; Sayre v. Trustees, 192 Mo. 95; Cowan v. Shaver, 197 Mo. 23; Archambault v. Blanchard, 198 Mo. 384; Teckenbrock v. McLaughlin, 209 Mo. 533; Weston v. Hanson, 212 Mo. 248; Winn v. Grier, 217 Mo. 240; Giboney v. Foster,

230 Mo. 106; Curran v. Curran, 244 Mo. 429. (4) Counsel seem to contend that the attesting witness Arch McGregor was incompetent. They base this contention on the fact that he is the president of a corporation that had a lease on one of the deceased's buildings and that the corporation was a creditor of one of the legatees, to-wit, Charles Holland. They cite no authority to sustain this contention; in fact they do not boldly contend that he is disqualified, but simply insinuate that he might be. The statute settles this matter. It expressly disqualifies a legatee, but does not render the will void, but only the bequest to such legatee. Secs. 570, 573, R. S. 1909. (5) Influence gained by kindness and affection will not be regarded as undue, even though it induced testator to make an unequal and unjust disposition of his property in favor of those who have contributed to his comfort and ministered to his wants, if such disposition was voluntarily made. Schierbaum v. Schemme, 157 Mo. 1; Turner v. Butler, 253 Mo. 202; Thompson v. Ish, 99 Mo. 160, and cases cited; Huffman v. Huffman, 217 Mo. 182; Campbell v. Carlisle, 162 Mo. 634; Jones v. Thomas, 218 Mo. 508; Turner v. Anderson, 260 Mo. 1; Lorts v. Wash, 175 Mo. 487; McCall v. McCall, 135 U. S. 167.

BOND, C. J.—Suit to contest the will of Telemachus Blondville Holland, for alleged testamentary incapacity and undue influence, filed by his grandson, Grady Holland Sanford, after the settlement of the estate and shortly prior to the expiration of the running of the two-year Statute of Limitations.

The decedent was seventy-seven years old at the date of his death in Springfield, Missouri, on July 30, 1913. He died possessed of property variously estimated to be of the value of from $800,000 to $1.000.000. The property consisted chiefly of very valuable business buildings located on and near the Public Square, and a large stock farm of several hundred acres lying about two miles southwest of the city.

On February 19, 1913, the testator executed a will in which he divided his property among certain specified beneficiaries, including his grandson, Grady Holland Sanford. Later, on June 17, 1913, a second will was executed, in which certain changes were made, among which was the decreasing of the bequest to his said grandson.

At the trial both wills were introduced in evidence and a careful comparison discloses that the principal changes made were the elision of a trust created in favor of his son Charles, virtually the same property being bequeathed to him for life with absolute remainders in his sons; the changing of the bequest to his daughter Edith, to a stated sum of money, the realty devised to her in the previous will being added to and included in the bequest to his wife Bertonia, and the lessening of the bequest to his grandson by excluding a certain business property on St. Louis Street and adding this, also, to the bequest to his wife.

The record is very voluminous, as usual in such contests. After a thorough and careful reading of same, the material facts disclosed by witnesses for plaintiff show that T. B. Holland was a man of unusual business ability and good judgment; that he stood very high in the community in which he lived, and considering his age and the fact that he had been troubled with nervous eczema for many years, his mental faculties remained substantially unimpaired up to the time of his death; that he showed affection for his children and grandchildren and evinced a desire to divide his property equitably.

As to his testamentary capacity, the evidence showed mental clearness and ability to transact all necessary matters of business; that his interest remained keen up to the time of his death in relation to the various matters connected with the rebuilding and restoration of several business buildings that were destroyed by fire the first part of June, 1913.

276 Mo.—30

It also appears that after the execution of the first will, called the February will, a fire occurred, in which many of the buildings owned by Mr. Holland on the Public Square and St. Louis Street were either entirely or partially destroyed and rendered unfit for occupancy. This made a great difference in the income received from these properties, and Mr. Holland, becoming dissatisfied with the apportioning of his property in the February will, which had been divided on the basis of the income from the various properties, decided to have a second will drawn. Thereupon the will in contest was executed on June 17, 1913, with such changes as have already been indicated.

Persons closely connected with Mr. Holland, who had known him for many years, testified as to his mental clarity and grasp of business matters and the usual affairs of everyday life. Dr. Beeson, who attended Mr. Holland during his stay at a sanitarium in Claremore, Oklahoma, where he went for treatment for nervous eczema, testified that on July 2, 1913, his mental condition was good, but that he was worrying over business matters, and that he advised him worry only served to increase his nervousness, the cause of his malady.

George Tefft, a distant relation and who had known Mr. Holland for many years, testified that his mind was clear on June 15, 1913; that Mr. Holland told him at that date that he had been suffering from eczema for years.

Mr. Jarrett, father of one of his sons-in-law, testified that he saw Mr. Holland the last of June, 1913, when he was called to Mr. Holland's home to talk over the reconstruction of the Ross Building, of which he wished him to have the contract; that his mind was clear at that time and he had no difficulty in expressing his wishes, and that he was "entirely competent to transact his own affairs without assistance."

Dr. Ralston, the Holland family physician, who attended Mr. Holland during his last illness and who was in and out the Holland home for years, testified

that after his return from Claremore he was in better condition than he had been for some time; that at times when previously ill he had been delirious; that it was not unusual for a man of his age to be delirious when ill; that he "never saw him when [he] thought he was liable to do any violence," that he "did not state at any time that he was not in mental condition to make the will;" that his mental condition on the day he witnessed the will was better than it had been for some time; to use the witnesses's own words, "seemed as well to me as I had seen him in a year;" that he was "cheerful enough that day."

Mr. Arch McGregor, one of the witnesses to the signature of the will, testified that Mr. Holland "was cheerful, in good humor and joked and laughed, too." This was the day the last will was signed. He also testified that Mr. Holland asked Dr. Ralston to make a statement as to the clarity of his mind and that he knew what he was doing, and that Dr. Ralston wrote it out in longhand.

As to any influence that may have been brought to bear in the making of the will in contest, the evidence in the record shows that Mr. Holland worried considerably about his son; that he expressed anxiety to leave the bequest to him in such shape that it should not be dissipated; that he finally shaped it in such a way that a certain amount would be left him to pay any immediate debts and the rest to him for life with remainders in his sons (Mr. Holland's grandchildren); that after the execution of the February will, a fire occurred which destroyed much of Mr. Holland's best income property on the Public Square and St. Louis Street; that the property in the February will had been divided on the income basis and becoming dissatisfied with this will, he had the second will drawn, using the first one as a basis, and made therein the changes that have already been indicated above. There is nothing in the record to show that any one exerted any controlling influence over him in the making of this will. It is true there appears to have been some feel-

ing between Mrs. Holland and Mr. Sanford (the father of contestant), but it does not appear that Mrs. Holland influenced the changing of the bequest to his grandson, Grady Holland Sanford. Mr. Holland expressed at various times a desire to divide his property fairly, and appears to have had unusually strong affection for the members of his immediate family and for his grandchildren.

Grady Sanford testified as to the strong affection that existed between his grandfather and himself; that he spent the greater part of his time in his early boyhood with the Holland children, Louise Holland being about his own age; that a coolness arose between them as he grew older and that he did not feel as welcome at the Holland home as formerly, and that when Louise Holland was married he was away at school, but did not receive an invitation to her wedding. However, none of this testimony showed any active antagonism, nor did his grandfather ever show any lessening of his affection for his grandson.

At the close of plaintiff's evidence the court gave a peremptory instruction to the jury to find both issues for defendants and to establish the will. A verdict in accordance was returned, and from a judgment entered thereon, plaintiff duly appealed to this court.

I. After the formal proof of the execution of the will and the sanity of the testator at the time, the weight of evidence was against the contestant. Hence it became necessary for him, in order to obtain a submission

**Peremptory Instruction.** of the issue of testamentary incapacity to adduce some substantial evidence tending to support that affirmation, in total default of which there could have been no error on the part of the circuit judge in directing a verdict on that issue in favor of respondents.

We have been unable to glean from any testimony or evidence adduced by the plaintiff, a legal basis for an inference that the testator did not possess testamentary capacity when he made his will on June 17,

1913.  The facts touching his mental capacity on that date have been summarized in the preceding paragraph of this opinion, and in our judgment neither singly nor collectively do they afford any ground upon which a jury would be entitled to find the fact to be that T. B. Holland was mentally incapable, on June 17, 1913, of executing the will which he then made.  The standards and tests of mental capacity to make a will have been so repeatedly announced in this State and are so firmly established that it is hardly necessary to refer to citations.  A testator with mind enough to understand the ordinary affairs of life and the kind and extent of his property and who are the natural objects of his bounty and that he is giving his property to the devisees mentioned in his will in the manner therein stated, is capable of making a will under the law of this State. [Hahn v. Hammerstein, 272 Mo. l. c. 259; Giboney v. Foster, 230 Mo. l. c. 131; Winn v. Grier, 217 Mo. 420; Bensberg v. Washington U., 251 Mo. l. c. 658.]  There is no evidence in this record that the testator lacked any one of these essential qualifications to a valid disposition of his property at the time when the will under review was executed.  Indeed, the only conclusion which can be drawn from the evidence, taken singly or conjunctively, is that in the making of his testament, he possessed every qualification prescribed by the laws of this State to enable him to make a valid disposition of his property.  In such cases the settled rule is that the trial court should direct a verdict upholding the will.  [McFaddin v. Catron, 138 Mo. l. c. 226, 227; Story v. Story, 188 Mo. l. c. 128, 129; Teckenbrock v. McLaughlin, 209 Mo. l. c. 540; Hayes v. Hayes, 242 Mo. l. c. 172.]

II.  As to the issue of undue influence, under the law of this State, the contestant is required, in the first instance, to assume the full burden of proof of that allegation, and it is impossible to find in any of the facts and circumstances contained in this record, aught that shows in the remotest

Undue
Influence.

degree that when the testator made the will in question, his mind was dominated and controlled to such an extent that it reflected the designs and wishes of other persons than himself. [Hayes v. Hayes, 242 Mo. l. c. 168, 169.] A contest of a will is a legal and statutory action. In such cases whether there is any substantial evidence tending to prove the alleged grounds of contest is always, primarily, a question of law to be determined by the court. If that is resolved against the contestant, then nothing remains to be tried by a jury. If, however, it is resolved in favor of the contestant, then the case must go to the triers of the fact, whose peculiar province it is to determine the credibility of witnesses, the effect of testimony and the force of legally allowable inferences. In other words, whether a given set of facts and circumstances have any probative force whatever, is a question at the threshold of the case which the court must determine and when this has been ruled adversely under the applicatory law, the case should be taken from the jury.

The circumstances relied upon by appellant to support the inference of undue influence, appear to be that Mrs. Holland was present when the February will was made by the testator, and at the trial it was shown that marginal pencillings in her handwriting had been made on that will; that she went to Claremore where her husband was taking a cure, and dispensed with a nurse upon his return home, and other attentions to his comfort and assistance in signing checks for the payment of household expenses, all of which, according to the theory of appellant, tended to prove a fiduciary relationship and, therefore, imposed the burden upon respondents to show that the will in question was not the result of undue influence. We cannot assent to that view. All of such offices of affection and interest or business services were distinctly within the scope of wifely duty and are not the predicates of undue influence. [Lorts v. Wash, 175 Mo. 487, l. c. 505; Seibert v. Hatcher, 205 Mo. 83; Mackall v,

Mackall, 135 U. S. 1. c. 167; Winn v. Grier, 217 Mo. 1. c. 459; Bennett v. Ward, 199 S. W. 1. c. 947.]

We think the peremptory instruction was justified on both issues by the state of the record and that the judgment is manifestly right and should be and is affirmed. It is so ordered. All concur, except *Blair, J.*, not sitting.