ALVA FLETCHER ET AL., Appellants, v. MARGERETTE HENDERSON ET AL.
—62 S. W. (2d) 849.

Division One, August 3, 1933.

350

*Moore & Moore* and *General Rogers* for appellants.

*W. C. Boone, Wm. D. Roberts* and *L. Z. Banta* for respondents.

FERGUSON, C.—This is a will contest. John K. Dunnegan, age seventy-two years, died October 10, 1927, in Ozark County, possessed of real and personal property of an admitted value of "between $16,000 and $17,000." On October 17, 1927, the paper writing in question was admitted to probate, in the Probate Court of Ozark County, as his last will and testament. On September 12, 1928, this action contesting the will was commenced in the circuit court of that county. The plaintiffs and defendants are all the heirs at law of the deceased. The verdict of the jury was for defendants, proponents, sustaining the will and from the judgment thereon establishing the contested writing as the last will and testament of John K. Dunnegan, the plaintiffs, contestants, appeal.

The only grounds of contest alleged in the petition are testamentary incapacity and undue influence. As we shall have occasion to later refer to the specific language and averments of the following parts

of the petition we here set out the allegations of the petition stating the grounds upon which contestants rest their claim that the paper writing is not a valid will. It is charged:

"That at the time such will was made, the said John K. Dunnegan was far advanced in years, to-wit, of the age of 72 years, and was in feeble health, in consequence of which he was in and of weak and feeble mind, his mind and memory being greatly impaired and was in such mental condition that he was of unsound mind within the meaning of the law, incapable of understanding, realizing or appreciating the objects of his bounty, what disposition made or was the making of his property therein, nor did he understand or comprehend the meaning or effect of said instrument.

"Plaintiff further states that being in such condition, in mind and body the said John K. Dunnegan was very easily influenced, and was completely under the influence, domination and control of (certain named defendants) prior to the time of making such will and that such persons by their entreaties, requests, prevailed upon him to make such will or signed his name thereto, and to the almost total exclusion of some of the Plaintiffs herein, who were of the same degree of kinship, as those who received a large share of his bounty, and did poison the mind of said testator while in its feeble condition toward some of his children, in favor of others, and not realizing the disposition he made, or was making of his property and being unduly influenced by said persons by telling the said John K. Dunnegan that Plaintiffs were always against him, and had wronged him, by reason whereof he was induced to make such pretended will whereby Plaintiffs herein were almost totally disinherited."

It appears that Dunnegan had formerly executed a will which he left for safe keeping with the Bank of Gainesville. Shortly prior to the execution of the contested instrument he called at the bank, requested his will and took it away. He had been married to his then wife, his third marriage, but a short time. Apparently using the will removed from the bank, which had been prepared by a lawyer, as a form, he wrote the instrument contested, in his own handwriting, at his home, in the presence of his wife who, as a witness for contestants, so testified. At the time he remarked, that he could not sign the will then; that he would have to "take it down to Mr. Harlan," the president of the bank, and have "two men see me sign it;" have "Mr. Harlan and somebody else see me sign it." Having written the will he gave it to his wife who put it in a trunk in which they kept valuable papers, and to which both had access, where it remained until he took it to Gainesville to have it attested. The president of the bank, John C. Harlan and his son, M. T. Harlan, cashier of the bank, were well acquainted with Dunnegan who had transacted all his banking business with that bank over a long period of years. They were thoroughly familiar with his signature and

354

handwriting. Dunnegan called at the bank and after transacting some business, presented the identical paper writing in contest to the senior Harlan, saying, "I have written out another will and I want you to witness it." The date of the instrument had been left blank and the senior Harlan inserted the date therein whereupon Dunnegan called to M. T. Harlan who was in another part of the bank and as the younger Harlan testified "told me he wanted me to witness another will." There was other conversation between the Harlans and Dunnegan at that time which is unnecessary to set out. The Harlans signed as attesting witnesses and upon the trial were called as witnesses by the proponents. They identified the paper writing, the handwriting and signature of Dunnegan, their own signatures as attesting witnesses, the date inserted therein in the handwriting of the elder Harlan, related the conversation, circumstances and events surrounding the signing and attestation of the instrument, stated Dunnegan was, at the time, of sound mind and testified to every essential and requisite of due signing, attestation and execution under our statute. On the cross-examination of M. T. Harlan it developed, and he so testified in response to questions propounded by counsel for contestants and upon examination of the instrument, that it was apparent and discernible that the signature of Dunnegan thereon was written at a place where his signature had previously been inscribed and erased. The witness could not recall that he observed that condition at the time he attested the instrument but stated that the name of the testator signed thereto was the "genuine" signature of Dunnegan. Both attesting witnesses were positive as to the facts and acts constituting due execution. The proponents having thus, by the testimony of the attesting witnesses, made essential and formal proof of due execution of the will in question and that Dunnegan was at the time thereof of sound mind the contestants then offered evidence calculated to support the grounds of contest alleged in the petition. Contestants offered no testimony whatsoever tending to impeach the signature or the due execution of the will or rebutting in any measure the proof of due execution made by proponents and only the testimony of one witness on behalf of contestants so much as touched upon any matter having to do with the preparation, writing or execution of the instrument; that being the testimony of the wife of deceased to which testimony, in stating what the evidence shows in reference to the writing of the will, we have referred. She further stated that upon Dunnegan's return from Gainesville where he had taken the writing for the purpose of signing and having same attested, he delivered the will to her and she again placed same in the trunk to which reference has been made. The will was found in this trunk after his death. All the other evidence introduced on behalf of contestants related to the alleged mental incapacity of Dunnegan to make a valid will. After the introduction of evidence

by the contestants proponents offered the testimony of numerous witnesses relating wholly to testamentary capacity. Without reviewing or analyzing the evidence we are constrained to observe that it is extremely doubtful that any substantial evidence was adduced tending to show mental incapacity so as to require the submission of that issue to the jury. Upon the trial contestants abandoned the charge of undue influence and offered no evidence whatsoever tending to sustain that allegation of the petition.

At the conclusion of all the evidence the defendants offered and the court gave instructions numbered 1, 2, 3, 4, 5, 6, 7, and 8. Instructions 1 and 8 are purely formal and relate respectively to the form of verdict in the event the jury finds for defendants, proponents, and the number of jurors who, concurring, may return a verdict. Instruction 7 tells the jury the "burden is upon the defendants to show by the greater weight of evidence that at the time of the execution of the paper writing . . ." Dunnegan "was of sound and disposing mind and memory as defined in other instructions." No complaint is made of either of these instructions nor do appellants complain of Instruction 6. Appellants however assign as error the giving of Instructions 2, 3, 4, and 5. Instruction 2, told the jury: "You should find the paper writing introduced in evidence is the last will and testament of John K. Dunnegan, deceased, unless you further find from the evidence that at the time of making said written instrument the said John K. Dunnegan was of unsound mind as hereinafter defined." The remainder of the instruction as well as Instructions 3, 4, 5 and 6 define, and relate solely to, testamentary capacity and the standard of legal capacity to make a valid will. Contestants, as appellants, do not claim that by these instructions the court incorrectly or erroneously advised the jury concerning testamentary capacity but their contention is that by Instruction 2 the court erred in confining and limiting the issue submitted to the jury to testamentary capacity alone and in refusing instructions offered by them designated A, B, C, D and E. By their refused Instructions A, B, and E, appellants sought to have due execution of the contested writing submitted as an issue for determination by the jury. The other instructions, C and D, offered by appellant, and refused, in substance told the jury that if they found from the evidence that the instrument was duly executed as the will of Dunnegan but afterwards he erased his name therefrom "with intent to change such will or destroy same as a will" and "that thereafter decided to allow such instrument to stand as his last will and testament and rewrote his name thereto" without again having same properly attested the verdict should be against the will.

The matter is resolved to this; did the trial court err in refusing to submit due execution and revocation to the jury as issues for their consideration and determination? When this action was filed

it operated to vacate the judgment of the probate court admitting the will to probate "leaving the will unproven unless and until established by the judgment of the circuit court." [Smith v. Smith, 327 Mo. 632, 37 S. W. (2d) 902.] Will contests "are held to be a solemn form of probating wills under our statute." [Teckenbrock v. McLaughlin, 209 Mo. 533, 108 S. W. 46.] ■ It was therefore incumbent upon the proponents of the will in the first instance to make proof of the due execution of the will, i. e., compliance with all the requirements and formalities prescribed by statute and that the testator was at the time of sound mind. ■ When this was done "the weight of the evidence was against the contestant" and it then "became necessary" in order for contestants "to obtain a submission" to the jury of either, that the instrument was not duly executed or testamentary incapacity, as an issue, "to adduce some substantial evidence tending to support" such affirmation "in total default of which" the trial judge could properly direct a finding on such issue in favor of proponents. [Sanford v. Holland, 276 Mo. 457, 207 S. W. 818; Goedecke v. Lindhorst, 278 Mo. 504, 213 S. W. 43.] While the petition in the instant case does not allege, as a ground of contest, that the will was not duly and properly executed, nevertheless, and even had contestants wholly abandoned the action, the defendants, as proponents, in order to establish the will were required to make proof of due execution to the satisfaction of the court. The evidence offered by proponents relative to execution, as we have pointed out, is uncontradicted, and sufficiently shows compliance with every requisite of due execution and no evidence to the contrary or in conflict therewith was adduced by contestants. ■ The trial court by refusing to give contestant's requested instructions submitting due execution, as an issue of fact, to the jury in effect ruled that due execution had been shown as a matter of law and that no issue for the jury had been made, such action being equivalent, in result, to a direction to the jury to find the will was duly executed. In view of the undisputed evidence, by unimpeached witnesses, showing due execution, we cannot say the trial court erred in its ruling. One effect of the ruling of the trial court was that the proof as to execution of the will made by proponents was sufficient to satisfy the court that all statutory requirements of due execution had been complied with and the due execution thereof established. ■ Further we are of the opinion that contestants in attacking the validity of the will are foreclosed by admissions of due execution made in their petition and therefore cannot rely upon a claim of undue execution as affecting the validity of the will. Contestants petition not only does not in any manner question the proper execution of the will but it states in the excerpts we have above set out that, "at the time such will was made" Dunnegan was of unsound mind; that he was "completely under the influence, domination and control of" certain of

the defendants "prior to the time of making such will;" that "such persons . . . prevailed upon him to make such will;" and that by reason of certain alleged representations made to him by defendants Dunnegan "was induced to make such pretended will." The petition thus admits the making of the will in contest by Dunnegan, but charges it is not a valid will because he was at the time of unsound mind and unduly influenced by defendants. Heinbach v. Heinbach, 274 Mo. 301, 202 S. W. 1123, was an action in the circuit court to establish a will which had been rejected by the probate court. The answer of the opponents of the will avers that the " 'paper writing is not the last will and testament of said Samuel Heinbach, deceased, but that *the same was made* at a time when the mind of deceased was impaired by old age, disease, physical suffering, and bodily decay and dissolution, . . . so that he had no knowledge or understanding of *what he was doing* at the time he was induced, as hereinafter stated to go *through the form of executing said purported will.' "* The answer continuing alleges that at the time, etc., "the mind of deceased was impaired so that he was incapable of understanding or appreciating *'what disposition he had made or was making of his affairs,' "* and that plaintiff "by coercion, threat, duress, fraud and over-persuasion dominated the mind of said Samuel Heinbach and *prevailed upon and coerced his making a will in her favor."* Objection was made that the instructions given assumed, without requiring the jury to find, that the will was formally and properly executed and limited the consideration of the jury to the one issue of mental capacity of the testator. This court said:

"It certainly never occurred to the pleader that there was an issue as to whether the will was signed and properly witnessed. Otherwise he would not have expressly admitted that deceased went 'through the form of executing the purported will,' or 'that the same was made,' or that plaintiff 'prevailed upon and coerced his making a will in her favor.'

"If words mean anything the formal execution of the will is admitted, asserted and reiterated. To 'make a will' is to execute it. The common understanding of the words 'making a will' is the writing, signing and attesting it in due form. . . . Our statute provides that a will shall be in writing, signed by the testator and attested by two or more competent witnesses subscribing their names to the will in the presence of the testator.

It is not executed until all that is done.

"So when the answer makes those allegations, and assigns, as the only reasons for the invalidity of the will, undue influence and the inability of the testator to understand what he was doing, that is an admission that the signing and witnessing of the will were in the form required by the statute. The allegations effectually removed

from the consideration of the court and jury all defects in its execution except the alleged want of capacity.''

Gordon v. Burris, 141 Mo. 602, 43 S. W. 642, seems apropos. In that case undue influence was the sole ground of contest of the will of Lucinda Burris alleged in the petition. Due execution of the will was not questioned. At the conclusion of all the evidence in the case the court at the request of proponents peremptorily directed the jury to return a verdict that the instrument was the last will and testament of Lucinda Burris. There as in the instant case one contention made by contestants on appeal was that an issue of due execution should have been submitted to the jury. Discussing that contention this court said:

''Plaintiff's counsel . . . say the burden is on the proponents to establish the due execution of the will, and that issue should have been submitted to the jury though the evidence of the two attesting witnesses show every fact essential to its proper execution, and though the witnesses are unimpeached and their evidence is uncontradicted.

''The proceedings provided for contesting wills stand for the probate in solemn form, in which all the parties interested are brought before the court. The probate, in common form, is conclusive on all persons until impeached and brought in question by the proceedings provided by the statute. The statute requires the contest to be commenced by some person interested 'by petition to the circuit court of the county.' This implies that the ground relied upon to defeat the will shall be stated in the petition, and, if no sufficient ground be stated, the petition is demurrable. If the invalidity is claimed to exist on account of extraneous matters and no issue is made by the pleadings as to the proper execution of the will, then the pleadings should be construed as an admission of that fact by the parties, and *if the formal proof is made to the satisfaction of the court,* they should be estopped, on appeal, to question the correctness of the verdict, though rendered under the imperative direction of the court. The charge in this petition is that 'defendants, by fraud, art, and deception and undue influence, over-persuaded and induced the said Lucinda Burris to make a pretended will,' etc. By her petition plaintiff does not question the due and proper execution of the will or tender an issue on the question of its execution, nor do any of the parties to the suit do so. (Italics ours.)

''Still, a writing is not a will unless executed with all the formalities required by the statute, and when brought before the court for probate, whether in common or solemn form, proof of execution is necessary, but in case the parties make no issue upon it, the proof being necessary for the satisfaction of the law and not of the parties, they will be bound by their pleadings as in other cases. The evidence of the two subscribing witnesses shows that the paper writing was

signed by Lucinda Burris as her last will and that they subscribed their names thereto as witnesses in her presence and that she was at the time of sound mind. On this evidence the court, in effect, directed the jury to find that the will was duly executed. We are of the opinion that the fact the jury was required to find was inferentially admitted by the pleadings of all the parties interested, and no error, at least of which they complain, was committed in giving the peremptory instruction. It is therefore unnecessary to decide in this case, whether, if an issue had been made by the pleadings of the parties upon the question of the execution of the will, the court could properly have directed the jury on that issue.''

Upon this record, the pleadings and the evidence the trial court did not err in the refusal of appellant's instructions relating to due execution of the will.

█ The theory of revocation which contestants sought to have submitted to the jury by their Instructions C, and D, which the court refused, presupposes the due execution of the will but the subsequent revocation thereof by Dunnegan by the erasure of his signature ''with intent to . . . destroy same as a will.'' There is neither pleading nor substantial evidence to support these instructions. It suffices to point out that the petition does not charge revocation and such is not made a ground of contest. It is said in Adams v. Kendrick, 321 Mo. 310, 11 S. W. (2d) 16, ''In a will contest the plaintiff must state the one or more grounds upon which he contests the will . . . and the issues cannot be broadened or extended either by the admission of evidence or instructions on behalf of plaintiff.''

It appears the court did not err in refusing the instructions offered by appellants and the judgment of the trial court must therefore be affirmed. It is so ordered. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.