**Earl LEWIS et al., Appellants,**

**v.**

**D. E. McCULLOUGH, Purported Executor of the Purported Last Will and Testament of Eddie Lewis, Deceased et al., Respondents.**

**No. 52073.**

Supreme Court of Missouri,
Division No. 1.

April 10, 1967.

3rd day of August, 1963, at the age of 76. The will left $200 to each of the five children and the remainder in trust for the benefit of Leona Conner who was to be paid $60 per month as long as she lived. She also was to have the right to live on the real estate. Upon the happening of certain contingencies, the trust was to terminate and the trustee was to pay over the remainder and residue of the property to the Board of Directors of the R-II School District of Montgomery County, Missouri. It is not necessary for the determination of the issues on this appeal that the provisions of the will be set out in more detail. The parties will be referred to hereafter in this opinion as plaintiffs and defendants.

The defendants are D. E. McCullough, executor and trustee under the will, Leona Conner, and the individual members of the Board of Directors of R-II School District. The petition alleges the unsoundness of mind of Eddie Lewis, decedent, at the time of the execution of the will, and the undue influence asserted over him by Leona Conner. The various defendants, in substance, answered in the form of general denials.

Defendant Leona Conner was not represented by counsel in the trial court nor in this court. Plaintiffs offered no evidence on the issue of undue influence; consequently this issue was abandoned. At the outset of the trial the defendants, who are the proponents of the will, offered evidence and made formal proof of the execution and attestation of the will. The attesting witnesses testified to their long acquaintance with the decedent and gave it as their opinions that he was of sound mind on the date he signed the will. Thereafter, plaintiffs presented evidence. At the conclusion of the plaintiffs' evidence the trial court sustained the defendants' motion for a directed verdict and entered judgment decreeing that the paper writing, dated October 24, 1960, signed by Eddie Lewis, and admitted to probate August 14, 1963, was in truth and in fact the last will and testament of the said Eddie Lewis.

Speer & Herzog, Gordon I. Herzog, St. Louis, for appellants.

McQuie & Deiter, Montgomery City, for respondents Montgomery County R-II School District, and others.

Max Oliver, Montgomery City, for respondent D. E. McCullough.

WILLIAM M. KIMBERLIN, Special Judge.

This is a will contest case. The plaintiffs-contestants, who are the five children and only heirs at law of Eddie Lewis, deceased, are seeking to set aside the will of their father. The will was executed on October 24, 1960. The decedent died on the

Plaintiffs' motion for a new trial was in due course overruled and this appeal ensued. The plaintiffs on this appeal contend the trial court erred in four respects:

1. The court erred in refusing to admit in evidence plaintiffs' Exhibit 4 which was the inventory and appraisement of the estate.

2. The court erred in refusing to admit into evidence plaintiffs' Exhibit 2 which was a copy of a 1936 divorce decree in the case of Sallie Lewis v. Eddie Lewis.

3. The court erred in not accepting plaintiffs' offer of proof and in not allowing Clark Lewis and Isaac Butler to express an opinion as to whether decedent's mind was sound at the time of the execution of the will.

4. The court erred in directing a verdict for defendants because plaintiffs had shown by substantial evidence that the decedent lacked testamentary capacity, in that he did not understand the ordinary affairs of life, that he did not know the value and extent of his property, and that he did not understand who were the natural objects of his bounty and was not able intelligently to weigh and appreciate his natural obligations to them.

Since plaintiffs contend they made a submissible case, we will endeavor to state the facts most favorably to plaintiffs. Eddie Lewis, the decedent, at the time of his death on August 3, 1963, was 76 years old, and was residing with Leona Conner on his farm near New Florence, Missouri. He died seized of four tracts of land in Montgomery County. From time to time there were clay-mining operations conducted on his farm. The decedent did not have a formal education and could not read or write as this is generally understood, but he did have the ability to sign his name and to read figures. He did, however, through the years, handle his own business affairs. For a number of years he leased his clay pits and operated the clay mines that were on the real estate. At the time he executed

his will he was approximately 73 years of age. He had suffered a stroke in the spring of the year prior to the execution of his will on October 24, 1960. For approximately three months after the stroke he could not speak; however, he could understand what was being said to him. He was able to talk during the summer of 1960 and was able to drive his truck.

Decedent's dress in 1960 was usually overalls with patches glued over the top of other patches, although he had funds to buy clothes. He also wore a charm on his under clothing. The deceased had been married to three different women and had received divorces from each of them, and he was living at the time of his death with Leona Conner.

The Reverend Isaac Butler testified that he had known Eddie Lewis since 1931 when he came to Missouri to teach school, and that he had lived in the home for two years; that he moved away from New Florence several years prior to 1960 but subsequently moved back to New Florence and visited with Eddie frequently. Upon moving back he visited with Mr. Lewis several times during the summer of 1963; that Eddie would say at one time that he liked his children, and then he would say that they didn't come around as much as he thought they might; that he (Eddie) thought the children were too wayward from him and didn't have the proper regard for him; that in the year 1963 he would repeat himself many times and he would also contradict the same statement; that he had occasion to see Eddie Lewis within a month of the date of the execution of the will; that most of his conversation was, "I want to get my business in order; I want to get my business all straightened up"; that he said "he was going to see to it that Mrs. Connor was left $60.00 to take care of her and the home for the rest of her life"; that he also said "he was going to will his children $200.00 apiece"; that he said, "I am going to leave some money to the school"; that in April, 1960, Eddie made remarks about his chil-

dren that none of them had done what they should have for him as their father; that he felt that he didn't owe them anything in particular; that Earl Lewis, his son, had done many things for him that he thought were commendable, like a son should, but that Clark Lewis and some of the others, even Mae Belle, had not visited him like they should; that he repeated this conversation each time he saw him; that he saw and conversed with the decedent maybe ten or more times between April 20, 1960, and the year 1963; that after April, 1960, the first time the witness talked to Lewis was about the third Saturday in July, 1963, and that conversation was essentially the same as the other conversations; that he stated he had $75,000 in cash in the bank. Whereupon, the witness Butler was asked by plaintiffs' counsel: "Q Do you have an opinion as to whether he had a sound and disposing mind on October 24th, 1960?" To this question the court sustained the objection upon the ground that no foundation had been laid for the opinion. Offer of proof was made to the effect that decedent was not of sound mind at that time and during the entire year of 1960 and until his death in 1963. It is contended by plaintiffs that the trial court erred in this regard which requires a reversal and remand.

Clark Lewis, another son, testified in regard to the family history; that he was in the service and came back to live in the vicinity of New Florence in 1946 and helped his brother in a body shop; he left for a few years and then subsequently returned; that from time to time he would help his father do the chores on the farm; that he was around his father throughout the year 1960. Upon being asked what eccentric behavior on the part of his father he had observed, he stated that he had an appointment at the Veterans' Administration Hospital in St. Louis and he needed three dollars and some cents to go to St. Louis and asked his father for the money and his father turned him down; that when he would ask his father for money he would turn him down and say, "Honey, honey, honey, honey, no";

that his father would say, "Well, you save the pennies and the dollars will take care of themselves," and that he couldn't let him have the money since he hadn't saved the pennies. Whereupon witness Clark Lewis was asked: "Q Do you have an opinion as to whether or not he had a sound mind in October, 1960?" to which an objection was sustained. The offer of proof which was denied was to the effect that the father had an unsound mind in October, 1960.

Earl Lewis, who is the oldest child, testified that he helped his father in the clay mines and, upon returning to Montgomery County in 1946 from the service, helped his father with farm work; that in 1960 he borrowed $400 from his father and that he still owes it; that his father said he didn't want any interest; that his father repeated himself in 1960; and that he didn't know his father had a will until after his death.

Plaintiffs attempted to introduce into evidence through Judge O. A. Kamp, Probate Judge of Montgomery County, plaintiffs' Exhibit 4 which was the inventory and appraisement of the estate. The offer of proof showed the aggregate value of the estate to be $20,762.75. The objection of the defendants was sustained on the ground that it was not competent to prove value. Plaintiffs claim error in the refusal of the trial court to admit the appraisal and inventory into evidence.

As to plaintiffs' claim of error to the effect that the trial court did not permit lay witnesses Clark Lewis and Isaac Butler to express their opinions as to the unsoundness of mind of the decedent at the time of the execution of the will, the rule relative to permitting lay witnesses to testify as to the unsoundness of mind of a testator has been announced by this court in Lee v. Ullery, 346 Mo. 236, 140 S.W.2d 5, 9 [5] [6], wherein the court stated:

"The rule in this state is that a lay witness is not competent to testify that, in the opinion of such witness, a person is of unsound mind or insane, without first relating

the facts upon which such opinion is based; and, when the facts have been stated by such lay witness, unless such facts are inconsistent with such person's sanity, the opinion of such lay witness that the person under consideration was insane or of unsound mind, is not admissible in evidence and may not be received. Clark v. Commerce Trust Co., 333 Mo. 243, 62 S.W.2d 874, 882; Fields v. Luck, 335 Mo. 765, 74 S.W.2d 35, 45; Berkemeier v. Reller, Mo. Sup., 37 S.W.2d 430, 431; Nute v. Fry, supra [341 Mo. 1138, 111 S.W.2d 84]; Stevens v. Meadows, supra [340 Mo. 252, 100 S.W.2d 281]; Platt v. Platt, Mo.Sup., 123 S.W.2d 54, 56; Loehr v. Starke, 332 Mo. 131, 56 S.W.2d 772, 775. * * *

"In this connection it has repeatedly been determined that evidence of sickness, old age, peculiarities, eccentricities in dress or oddities of habit, forgetfulness, inability to recognize friends, feebleness resulting from illness, and other facts or circumstances not inconsistent with the ability to understand the ordinary affairs of life, comprehend the nature and extent of one's property and the natural objects of his bounty, and which are not inconsistent with sanity, cannot be used as a basis for the opinion testimony of a lay witness that a person is of unsound mind or insane. Berkemeier v. Reller, 317 Mo. 614, 296 S.W. 739, 753; Loehr v. Starke, supra; Smarr v. Smarr, 319 Mo. 1153, 6 S.W.2d 860, 864; Nute v. Fry, supra."

The crucial question in the instant case is whether these two witnesses laid a sufficient foundation to permit them to state their opinions as to the lack of testamentary capacity of the decedent. Plaintiffs contend that these witnesses testified to certain eccentricities of the decedent so as to come within the above rule. With this we are unable to agree. While it is true that each of the two witnesses had a long acquaintance with the decedent and each had ample opportunity to observe him, the foundation laid by each of the witnesses as to the eccentricities, if they are in truth and in fact eccentricities, in the judgment

of this court was not inconsistent with the decedent having a sound mind. The fact that the decedent repeated his stories and made inconsistent remarks is not inconsistent with soundness of mind. The fact that his son needed three dollars to pay for transportation to the Veterans' Administration Hospital for treatment and that the decedent refused to give the money to him and said, "Honey, honey, honey, honey, no," is not inconsistent with a sound mind. Nor are the facts that he glued patches on his overalls and wore a charm inconsistent with a sound mind.

It is the view of this court that none of the facts as testified to by these witnesses are so inconsistent with soundness of mind as to constitute a sufficient foundation to permit the lay witnesses to state their opinions as to the unsoundness of mind of the decedent within the requirements of the rule announced in the Lee case, supra. See also Walter v. Alt, 348 Mo. 53, 152 S.W.2d 135, and McGrail v. Rhoades, Mo., 323 S.W.2d 815. The reason for the rule is that the opinion of a lay witness as to the soundness of mind of a person whose mental condition is under investigation has no weight or value unless such opinion is based upon a knowledge of facts inconsistent with sanity. The jury is entitled to know the facts upon which the witness predicates his opinion, to the end that the jury may properly evaluate the conclusion of the lay witness. Pickett v. Cooper, 354 Mo. 910, 192 S.W.2d 412.

The court has read and analyzed the cases of Sturm v. Routh, Mo., 373 S.W.2d 922, and Machens v. Machens, Mo., 263 S.W.2d 724, cited by plaintiffs, in the light of the facts in this case and finds them unavailing to the plaintiffs. It is our opinion that the trial court's ruling on this evidentiary point was correct.

Plaintiffs' most serious ground of error is that the trial court erred in holding that they did not make a submissible case for the jury. As previously stated, the

defendants made a prima facie case showing due execution and attestation of the will as provided by statute and that the decedent was of sound and disposing mind on October 24, 1960. The burden is then cast upon the plaintiffs to produce substantial evidence to overthrow this prima facie case and to prove that on October 24, 1960, Eddie Lewis did not have sufficient mental capacity to make a will. Fletcher v. Henderson, 333 Mo. 349, 62 S.W.2d 849; Kaechelen v. Barringer, Mo., 19 S.W.2d 1033; Dowling v. Luisetti, 351 Mo. 514, 173 S.W.2d 381.

This being a will contest it is an action at law, so that the weight and credibility of the evidence is for the jury. The plaintiffs' evidence must be viewed in the light most favorable to plaintiffs. Pickett v. Cooper, supra; Walter v. Alt, supra.

It is our duty on review to accept the plaintiffs' evidence as true and to give to the plaintiffs the benefit of every inference legitimately to be drawn therefrom.

There are a myriad of cases in this state laying down the essential elements of soundness of mind sufficient to make a valid will. One of these cases is Adams v. Simpson, 208 Mo. 168, 213 S.W.2d 908, 911, wherein it is stated:

"In this state a testator has testamentary capacity when he has mind enough to understand the ordinary affairs of life, the nature and extent of his property, who comprise the objects of his bounty, and the fact that by the instrument he is executing he is giving his property to the persons or class of persons he names in his will, in the manner in which that instrument recites. Morrow v. Board of Trustees of Park College, 353 Mo. 21, 181 S.W.2d 945; Rex v. Masonic Home, 341 Mo. 589, 108 S.W.2d 72, 85, and see also 57 Amer.Juris. § 1262, 1268."

Another is the more recent case of Sturm v. Routh, supra. In the course of the opinion the following language appears at 373 S.W.2d l.c. 928:

"It has long been the rule in this state that '[t]o have a mind and memory enough to make a will, testator should be able at the time to understand the ordinary affairs of life, the value and extent of his property, the number and names of the persons who were the natural objects of his bounty, their deserts with reference to their conduct and treatment of him, their capacity and necessities. He should have active memory enough to retain all these facts in his mind, without the aid of others, long enough to have his will made. Otherwise the law takes from him power to dispose of his property by will. A mind not coming up to that standard is not a testamentary one.' Bensberg v. Washington University, 251 Mo. 641, 158 S.W. 330, 336."

As to the first requisite that decedent did not understand the ordinary affairs of life, it is true that decedent was approximately 73 years of age at the time of the signing of the will and he had suffered a stroke in the spring of 1960 but, prior to the execution of the will in October of that year, he was up and around the house, was able to talk, and was driving his truck. He had no formal education except that he could sign his name on a check and on contracts and could read figures, but this does not mean that he could not understand the ordinary affairs of life. The evidence was that he repeated himself many times and made inconsistent statements. The transcript does not reveal what these inconsistent statements were, but this again does not tend to prove he did not understand the ordinary affairs of life. The additional fact that he wore a charm and patches on his clothing likewise does not tend to prove the failure to understand what was going on in the world about him.

There is a paucity of evidence in the record to show the nature and extent of the decedent's property. Witness Butler testified that decedent told him in 1960 and in 1963 that he had $75,000 in the bank. There is no showing as to the amount the

decedent actually did have in the bank at or near the time of the execution of the will. This statement, standing alone, does not rise to the dignity of substantial evidence sufficient to prove that decedent did not know the nature and extent of his property at the time of the execution of the will.

 The next requisite is that the testator must know the number and names of the persons who were the natural objects of his bounty. Eddie Lewis unquestionably did know the names and number of those persons. One of the plaintiffs' witnesses testified that decedent had told him he was going to give each of his children $200 and also that he wanted to provide for Leona Conner during her lifetime. That is exactly what the will did. The provisions of the will are wholly consistent with plaintiffs' evidence regarding the disposition of the property and as to whom the decedent said he would leave his property. Plaintiffs make note of the fact that the name of one of the children was misspelled in that Mae Belle Mickens is referred to in the will as "Mabel" Mickens. This is obviously an error of the scrivener and under the doctrine of idem sonans, this is of no moment. Plaintiffs presented no substantial evidence that decedent did not know the number and names of the individuals who were the natural objects of his bounty.

It is the considered judgment of this court that plaintiffs' evidence, viewed in its most favorable light and giving to it the benefit of the reasonable inferences to be drawn therefrom, does not constitute substantial evidence to prove want of testamentary capacity in Eddie Lewis on October 24, 1960, and that therefore the trial court ruled correctly in sustaining defendants' motion for a directed verdict sustaining the will.

As to the plaintiffs' other assignments of error, assuming, but not deciding, that plaintiffs' Exhibits 2 and 4 had been received in evidence, neither would have aided plaintiffs' case and hence it is unnecessary to rule on their admissibility.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by KIMBERLIN, Special J., is adopted as the opinion of the Court.

All concur.