GEORGE G. SMARR, SHIRLEY PUCKETT, RENA MAUDE PUCKETT, a Minor, by Her Guardian and Curator FOREST R. PUCKETT, MARY WILLINA SMARR and THELMA SMARR, Minors, by Their Guardian and Curatrix OLIVE B. SMARR, Appellants, v. ROBERT L. SMARR, and ROBERT L. SMARR and MAUDE GRAHAM, Executors of Last Will of EDWARD T. SMARR, and JAMES P. CHINN, Administrator With Will Annexed, *Pendente Lite*, of Estate of EDWARD T. SMARR.

Division One, May 18, 1928.

1154

*Nick M. Bradley* and *Aull & Aull* for appellants.

*Lyons & Ristine* and *Blackwell & Sherman* for respondents.

ATWOOD, J.—This is a suit to set aside the will of Edward T. Smarr, deceased. From a judgment for defendants on an instructed verdict plaintiffs have appealed.

Observing the difficulty that has evidently attended the effort of counsel on both sides of this case to comply with our rule that they present a *fair and concise* statement of the facts of the case without reiteration, statement of law, or argument, we are reminded of our own dilemma when we endeavor to comply with a certain statutory mandate and at the same time bring our statement of the case within

the reasonable compass of an opinion. Section 1518, Revised Statutes 1919, provides that "in each case determined by the Supreme Court . . . the opinion of the court should be reduced to writing and filed in the cause," etc., and the next section provides that the "opinion shall always contain a sufficient statement of the case, so that it may be understood without reference to the record and proceedings in the same." The provision of our State Constitution on this point (Art. VI, Sec. 3, Amendment of 1890) is simply that the "opinion of each division shall be in writing and shall be filed in the causes in which they shall be respectively made during the term at which the cause is submitted, and such opinions shall be a part of the records of the Supreme Court." In Turner v. Anderson, 236 Mo. 523, l. c. 531, Division One of the Supreme Court, speaking through LAMM, J., said that the statute requiring a "statement" was "the chief factor swelling the length of appellate opinions and causing them, now and then, to be much murmured against," and that it might "be worth while right soon to gravely consider and finally determine whether that statute is constitutional and should be longer obeyed." The question so raised was not there ruled and we are not called upon to rule it now, but it is surely not amiss for us to say that whether the statute be obeyed as obligatory or merely "in a spirit of comity and out of deference to the lawmaking power" it should not be so followed as to swell the length of opinions unduly and thereby cause us to put at naught express language of the Constitution looking to a prompt determination of cases under submission. Hence, in this opinion, although we have painstakingly examined the entire record which is voluminous, we deem it proper to submit the result of our labor as briefly as an intelligible statement of the substance of the case will permit without incorporating any lengthy quotation or burdensome digest of the pleadings, evidence and proceedings.

The grounds alleged in the petition were improper execution of the will, mental incapacity of the testator, and the exercise of undue influence over testator by one of his sons, Robert L. Smarr, who was the principal beneficiary under the will and one of the defendants herein. Appellant George G. Smarr is also a son of testator, appellants Shirley Puckett and Rena Maud Puckett are children of Rovella Puckett, a predeceased daughter, and appellants Mary Willina Smarr and Thelma Smarr are children of William A. Smarr, a predeceased son of testator. The testator died December 18, 1921, aged eighty-two years, and left an estate of the value of about $25,000. Under the will the sum of $1000 went to plaintiff Rena Maude Puckett, and one dollar to each of the other plaintiffs, among whom was Olive B. Smarr, widow of said William A. Smarr, deceased. Robert L. Smarr was named as the residuary legatee and devisee. The two sons and four grandchildren above named were the only heirs at law

of the testator. Respondent Maude Graham is a niece of testator. She and said Robert L. Smarr were named executors of said will, which was admitted to probate in the Probate Court of Lafayette County on January 3, 1922. Plaintiffs' original petition was filed in the circuit court of said county, said minors suing by their regular guardians. James P. Chinn was thereupon appointed administrator *pendente lite* with the will annexed and made defendant herein. An amended petition was subsequently filed, to which defendant Robert L. Smarr, as an individual, filed a separate answer, and Robert L. Smarr and Maude Graham, as executors, filed a joint answer, both of which answers denied the allegations of the petition and, setting out the will, alleged that testator at the time he made it was of sound mind and memory and that said will was and is the last will of testator, and prayed that said will be declared and established as such. The administrator *pendente lite* filed answer stating that he would abide the judgment of the court. The reply was a general denial.

At the close of plaintiffs' case defendants requested the court to give a peremptory instruction in the nature of a demurrer to the evidence. The request was denied. Thereupon defendants asked an instruction directing the jury to find for defendants on the issue of undue influence. This instruction was given. At the close of the whole case defendants requested an instruction in the nature of a demurrer to all the evidence, which was given. Appellants here assign errors in five separately numbered paragraphs. Paragraph I assigns error in the giving of defendants' instruction withdrawing the issue of undue influence from the jury. Paragraph II assigns error in the giving of defendants' peremptory instruction in the nature of a demurrer to all the evidence at the end of the whole case, on the ground that there was substantial evidence to carry the case to the jury both on the issue of undue influence and that of mental incapacity. Paragraph III assigns error in the giving of both peremptory instructions, and amounts to a repetition of assignments 1 and 2. Paragraph IV assigns error in the exclusion of evidence offered by plaintiffs. Paragraph V is a general assignment of error in refusing to set aside the directed verdict and grant plaintiffs a new trial.

Defendants, as proponents of the will, adequately proved that this instrument was executed by testator as required by the laws of Missouri. No substantial evidence was offered in support of plaintiffs' allegation that the will was not so executed. Appellants do not greatly stress this contention, but if before us at all the point must be ruled against appellants.

Before considering appellants' assignments relating to the peremptory instructions given in the nature of demurrers to the evidence it is well that our duty in this respect be clearly stated. We are not to weigh the evidence and decide the cause as if in equity. A

statutory will contest is a proceeding at law and not in equity. Hence, in such a case an appellate court leaves to the jury the office of weighing the evidence, and to the trial court the exclusive office of setting aside a verdict because against the weight of the evidence. It follows that on demurrer to the evidence we must confine ourselves to the determination of whether or not there was substantial evidence (not a scintilla only) to go to the jury on the issues made, [Turner v. Anderson, 260 Mo. 1, l. c. 16; Wendling v. Bowden, 252 Mo. l. c. 692; Teckenbrock v. McLaughlin, 209 Mo. l. c. 538; Mowry v. Norman, 204 Mo. l. c. 183.] While we have often in effect said that courts are fond of sustaining wills, and that the proofs educed in support of undue influence or testamentary incapacity are searched with a critical eye, yet it holds true in will cases as in other cases at law that ''The party demurring admits the truth of the testimony to which he demurs, and also those conclusions of fact which the jury may fairly draw from that testimony. Forced and violent inferences he does not admit; but the testimony is to be taken most strongly against him, and such conclusions as a jury might justifiably draw the court ought to draw.'' [Pawling v. The United States, 4 Cranch, 219, l. c. 221; Pleasants v. Fant, 89 U. S. l. c. 121; Williams v. Railroad, 257 Mo. l. c. 112; Turner v. Anderson, supra.] So, in passing on these demurrers it is useless for us to canvass the proofs educed by contestees in contradiction of the evidence introduced by contestants, for in disputed matters we must accept the evidence offered by contestants rather than that of the contestees. The truth of plaintiffs' evidence being admitted by the demurrer we are concerned only with the admitted facts and the tendency of contestants' reasonable and material proof whether or not it be contradicted by that of the contestees.

On the issue of undue influence it appears that the alleged will was executed by testator at the Citizens Bank in Warrensburg, Missouri, on the 19th day of November, 1920, in the presence of two officers of the bank who duly signed the same as witnesses. The attorney who at his request had drawn the will was also present. A few days previous the testator had appeared alone at the office of this attorney in Warrensburg, told him that he wanted a will prepared, furnished the attorney with the necessary information from a writing that he then and there prepared, possibly supplemented by reference to an old will. Plaintiffs apparently cherish the thought that the son Robert L. Smarr furnished or caused his father to be furnished with a memorandum containing the information that was incorporated in the will as finally executed, but the proof utterly fails to furnish any substantial ground for such belief. In 1916 certain advancements were made to the three sons, all of whom were then living. The father announced his intention to convey 144 acres of land to George and a

like acreage to William. The latter was then living in Arkansas, and agreed to sell and did sell his advancement to George, who paid him the agreed price and accepted a deed from his father and mother for the entire 288 acres. The daughter received no advancement at this time, but the record discloses that for a long time prior to her death she was sick and was cared for by her parents, and under the will one of her daughters was given a thousand dollars. The wife of testator owned 160 acres upon which she and her husband were then living. After some objection on her part 120 acres of this tract were conveyed to the son Robert at the same time the other deeds were made. Appellants suggest this transaction as a circumstance showing the exercise of undue influence by the son Robert on his father, but it appears to us to be without weight in this respect. Appellants admit that the burden of proving undue influence was primarily upon them, but argue that these circumstances together with the disparity of gifts named in the will shifted this burden to defendants. We do not think so. No confidential relation was shown to exist between Robert and his father. Fraud and duress were neither pleaded nor proved. An unequal distribution is not, in and of itself, sufficient to establish undue influence. [Gibony v. Foster, 230 Mo. l. c. 137; Frohman v. Lowenstein, 303 Mo. l. c. 362; Winn v. Grier, 217 Mo. l. c. 459; Lindsay v. Shaner, 291 Mo. l. c. 311.] The burden of proving undue influence remained with plaintiffs who failed to discharge it, and this issue was properly withdrawn from the jury.

On the issue of testamentary capacity, while our practice requires the making of a prima-facie case by the defendants or proponents of the will and then requires the contestants to put in their case, it does not shift the burden of proof as to mental capacity and this burden remains throughout with the defendants. [Goodfellow v. Shannon, 197 Mo. l. c. 279; Major v. Kidd, 261 Mo. l. c. 625; Rock v. Keller, 312 Mo. 489.]

As to what constitutes a testamentary mind we have many times spoken. Perhaps no more satisfactory expression appears in the books than the following by Lamm, P. J., in Crum v. Crum, 231 Mo. l. c. 638:

"A general definition satisfying the judicial mind in this jurisdiction must be deduced from many cases, and we think may be held to be that if a person has not mind and memory enough to understand the ordinary affairs of life; the value, extent and nature of his property; the number and names of the persons who are the natural objects of his bounty; their deserts with reference to their conduct and treatment of him; their capacity and necessity; and has not active memory enough to retain all these facts in his mind long enough to have his will prepared—he had no power to dispose of his

property by will—a mind so afflicted with weakness and limitations is not a testamentary mind.''

The testator, Edward T. Smarr, had been a customer of the Citizens Bank at Warrensburg for two or three years. He executed the will there in the presence of the president and cashier of that institution, who at his request acted as witnesses. One of them had known him for about twenty-five years and the other for about three years. Both testified that he was of sound mind at the time he executed the will. Defendants made out a satisfactory prima-facie case of a testamentary mind.

On the issue of testamentary capacity plaintiffs introduced both medical and lay testimony. The medical evidence consisted of the testimony of Dr. Patterson of Warrensburg and Dr. Chalkley of Lexington. The former testified that he was called to treat Edward T. Smarr on May 21, 1921, and found him suffering from an attack of acute digestive trouble. Found him quite sick and unable to give intelligent answers to questions regarding his previous health. Gave it as his opinion that the patient was at that time also suffering from encephalon degeneration, a disease that comes from old age and affects the mind and body. Dr. Chalkley testified that, commencing November 14, 1921, he attended testator for about five weeks immediately preceding his death and made a diagnosis of arterio-sclerosis of the brain, a disease which comes on gradually. Said the patient was mentally incapacitated during the whole time he waited on him. Neither witness indicated any general acquaintance with or other medical treatment of the testator, and both apparently drew their conclusions as to the diseases from which they said he was then suffering from their observations made on the dates mentioned which were about six months and a year, respectively, after he had executed the will. They ventured no opinion whatever as to his soundness of mind when he executed the will in November, 1920, and testified to no facts from which it could reasonably be inferred that testator was suffering from these diseases at the time the will was executed, or if so, that he was then without testamentary capacity. In treating of senile insanity one of our leading text-books (1 Wharton and Stille, Med. Juris., sec. 990) makes use of the following language:

''Extreme old age, with its attendant physical and intellectual weakness, does not of itself incapacitate the testator, and therefore it raises no presumption of his not having a disposing mind. It follows that in this kind of insanity, as in all others, the exact subject of inquiry is the state of mind at the time of signing and executing the will.''

Plaintiff's lay testimony was furnished by some twenty or more witnesses, many of whom in addition to detailing facts stated their opinions and conclusions as to testator's mental condition. We do

not understand that mere statements of opinions and conclusions on the part of non-expert witnesses will in and of themselves compel a submission of the issue of testamentary capacity to the jury. [See Thomasson v. Hunt, 185 S. W. (Mo.) 165.] Also, in Lee v. Lee, 258 Mo. l. c. 612, we said:

"Another rule is that the opinion of a lay witness that a grantor or testator was of unsound mind is inseparably connected in probative force with the run of the facts and opportunities upon which the witness bases his opinion. The two go together. We do not mean to say that a non-expert witness must give all the minute details upon which he bases his opinion—that would be impossible and unnatural, but we do mean to say that his opinion is not worth while if separated from all facts of significance gleaned by personal observation. If those facts are connected, consistent, strong, and bear upon the issue, then the opinion of an intelligent lay witness has persuasiveness, cogency and weight—not otherwise."

The opinions and conclusions given by plaintiffs' lay witnesses ranged all the way from mere forgetfulness to unsoundness of mind. The following facts and circumstances gathered from the testimony are typical of the evidence to which these opinions and conclusions are ascribable. Testator was irritated by the use of disinfectants in the family laundry made necessary by the presence of clothing from his son William who lay ill in his home, and objected to the servant's charge of $2.50 for assisting in the washing; when a neighbor came in to assist his wife who suffered burns in 1919 from which she finally died, he insisted on showing her the scorched base board in the room where the fire occurred; on a subsequent Sunday morning he scraped off this charred portion; when this neighbor came over the morning after his wife died he said to her: "We had bad luck last night, we lost Sally;" afterwards he seemed to enjoy playing with children, though he had never done so before; started to change the garden fence and didn't finish it; put several inches of clay on a flower bed; cut down the hollyhocks because he said they were growing too high; gave some old safety razor blades to neighbors as keep-sakes; claimed that his daughter-in-law had not paid him for a chair and refused to let her keep some articles she said he gave her; forgot that a neighbor had returned a chicken; refused to let one of his wife's relatives have her dress bonnet; sometimes he would talk with neighbors he had known all his life and other times he wouldn't speak to or notice them, and would sit still for hours in a rocking chair; got lost in Warrensburg one night in December, 1920, in going to the home of his brother-in-law; asked name of persons over and over again; repeated in his conversations; was restless and childish and couldn't remember things he had recently said; promised to lend a man some money and apparently forgot the promise; said a chair broke down with him when

there was nothing the matter with the chair; fell over in a chair in the yard and said the chair fell in a hole, although there was no hole; and during his last sickness he said they had him in a sheep pen. These and like eccentricities and generalities scattered over a long period apparently form the basis of the opinions and conclusions given. They are not facts so connected, consistent, strong and bearing upon the issue of testator's mental condition at the time he executed the will, as to lend the opinions and conclusions any persuasiveness, cogency or weight. The rule is that sickness and old age do not in and of themselves constitute incapacity to transact the business of disposing of property by will. We have many times held that imperfect memory resulting from sickness or old age, forgetfulness of names of persons, repetition of questions, and eccentricities in dress and oddities of habit, are not evidence of such mental disease as renders a person incapable of making a will, when these things are not accompanied by proof of facts and of acts showing that the person is incapable of understanding the ordinary affairs of life, of transacting his ordinary business, understanding the extent of his property, and appreciating those who would be the natural objects of his bounty. [Berkemeier v. Reller, 296 S. W. (Mo.) 739, l. c. 753, and cases cited.] Plaintiff offered no substantial proof of such accompanying facts or acts and the issue of testamentary incapacity was, therefore, properly withdrawn from the jury.

Appellants also say the trial court erred in excluding the following legal, competent, relevant and material evidence offered by plaintiffs: An offer to prove by witness Olive B. Smarr that, based upon what she saw, observed and learned in conversations with Edward T. Smarr when she lived with him at Higginsville, she would testify that he was of unsound mind. An offer to prove by Dr. Patterson that the general symptoms of encephalon degeneration, the disease with which he gave it as his opinion that testator was afflicted some six months after the execution of the will, were "loss of memory, hallucination, forgetfulness and misstatement of facts and other things," and that "forgetfulness is a general symptom that always follows the disease."

On our above-stated view of the evidence these objections are perhaps not material on this appeal, but we think the trial court correctly ruled thereon. The record shows that plaintiffs offered to prove by witness Olive Smarr "that the condition of the old man's mind, Edward T. Smarr, at the time he made this will and prior thereto, and during the time that she lived with him in Higginsville, was unsound." The court ruled that she might show, in her opinion, what was the condition of his mind at the time he wrote this will. Plaintiffs did not except to this ruling, but put the question as ruled and the witness replied that she thought "his mind was very unsound; he was very childish." As to the second and third objections, the opinion

of experts relative to mental disease "may be based upon the symptoms and circumstances which come within their own observation, or which are testified to by others, or upon hypothetical statements or questions assuming their existence." [1 Wharton & Stille's Medical Jurisprudence, sec. 338.] No hypothetical statements or questions were submitted to this witness, but the court time and again ruled that he might tell of any symptoms he observed in his examination of the patient. Furthermore, the witness was directly asked, "what are the symptoms of that disease?" His reply, without objection, was: "A loss of memory."

We find no reversible error in the record and the judgment establishing the will is affirmed. All concur.