JOSEPH PLATT, CARL PLATT, PEARL LUDWIG, JUNE CASEY, MARTIN PLATT, ROBERT PLATT and DAISY PLATT, by and through her Next Friend, SAM WEBER, v. TILLIE A. PLATT and N. REBECCA CAMPBELL, Appellants, WILLIAM PLATT, RESPONDENT.—123 S. W. (2d) 54.

Division Two, December 20, 1938.

*Max Haas* and *Henry H. Furth* for appellants.

*Patrick A. Marcella* for respondents.

BOHLING, C.—Proceedings to cancel certain deeds from William Platt and Tillie A. Platt, his wife, to N. Rebecca Campbell, and from said Campbell conveying said property back to said Platts, as husband and wife.

William Platt died from cancer of the prostate gland November 1, 1935, at the age of sixty-two. The Platt-Campbell transactions were had on October 11, 1935. The court *nisi* decreed the cancellation of the deeds.

William Platt was twice married. He and his first wife owned the real estate involved as tenants by the entirety. The first Mrs. Platt died in 1926. No children were born of the second marriage. The parties in interest are: The children of Mr. Platt by his first wife, respondents here; and the second Mrs. Platt, as his widow and grantee in the Campbell-Platt deed, and N. Rebecca Campbell, appellants here.

Appellants contend respondents adduced no substantial evidence to sustain the decree *nisi*; in fact, that said decree is against all the probative evidence in the case.

█ The purpose of the Platt-Campbell transactions was to create an estate by the entirety in Mr. and Mrs. Platt. Mrs. Platt makes no contention that the transaction is supported by a valuable consideration. There is no legal presumption against the validity of any provisions a husband may make in his wife's favor (White v. McGuffin (Mo.), 246 S. W. 226, 231(2); Chadwell v. Reed, 198 Mo. 359, 379, 98 S. W. 227, 233); █ and a conveyance is not invalid solely because it was executed during the grantor's last illness (consult Hamilton v. Armstrong (Banc), 120 Mo. 597, 622, 623, 25 S. W. 545, 550). Respondents say some of the circumstances attending the transactions seem strange; referring to the failure of Mrs. Platt to inform respondents thereof, and Mr. Platt's failure to make provision for a minor daughter. However, respondents expressly disavow having adduced any sufficient evidence to make an issue on fraud, trickery, undue influence, et cetera. The case, therefore, is not one where a grantor by reason of mental weakness, not amounting to mental incapacity, was taken advantage of through some inequitable incident, which, when considered in connection with such mental

infirmity, would be sufficient for the intervention of a court of equity to cancel the instrument involved. Respondents seek to sustain the instant decree solely upon the issue of Mr. Platt's mental incapacity to make a deed as of the time of the transaction. [Consult Chadwell v. Reed, supra.]

Respondents, without directing our attention to specific passages from the cases mentioned, say respondents' lay witness Pearl Ludwig [Vinning v. Ramage, 319 Mo. 65, 82(II), 3 S. W. (2d) 712, 719(3)]; Kadlowski v. Schwan, 329 Mo. 446, 456, 44 S. W. (2d) 639, 642(6) and respondents' expert witness Dr. Schoetter [Fields v. Luck, 335 Mo. 765, 775(2d), 74 S. W. (2d) 35, 39(3)], gave substantial, affirmative, and probative evidence that Mr. Platt was mentally incapacitated at the time of the Platt-Campbell transactions. In each of the cited cases there was affirmative testimony (sufficiently indicated by our local citations, supra) that the person whose mental capacity was questioned was mentally incapacitated as of the time of the transaction involved.

Appellants' abstract presents the testimony largely in narrative form, but respondents have not filed an additional abstract or attempted to point out wherein appellants' abstract is insufficient, if so; and we understand they do not question its sufficiency. The record before us does not contain a showing of mental incapacity on a parity with that found in the cases relied on by respondents.

Dr. Schoetter attended Mr. Platt from June 15, 1935, until Mr. Platt's death. The first hypodermic was administered June 26, and we understand from this witness the administration of narcotics steadily increased; that Mr. Platt had plenty of time in which to form the narcotic habit; that he was under the influence of narcotics and they were gradually affecting his body more and more until he died. Dr. Schoetter testified he saw Mr. Platt almost daily from the middle of September; but, when asked, refused to give an opinion as to Mr. Platt's mental condition on October 11, 1935, stating that would be difficult for him to say and all he knew was that he had a lot of narcotics. He affirmatively testified: ". . . he [referring to Mr. Platt] would be delirious and the like, and he would have his lucid moments. . . . There are lucid moments, even under heavy narcotics."

Pearl Ludwig, Mr. Platt's daughter, upon being asked how her father acted around October 11, 1935, replied: "I don't know if he knew me or not; sometimes I think he did and then again I don't. . . ." Witness tells of her father's physical condition; how he lost strength and gradually became weaker. She also narrates facts justifying the conclusion he was delirious at times. Asked if her father knew what was going on around him, she testified: "Well,

I was there at times, only the times I gave him narcotics, upstairs from the shop. . . . I don't recall his condition on that particular day, the 11th day of October, 1935." Speaking of his "previous" condition, she said: "Well, every day he appeared just about the same to me. He was not delirious every day." And, asked if he was "talking" around two weeks previous to his death: "No, that was around three weeks, and he really wasn't right and didn't know anything from that time until his death, as he was under the influence of narcotics."

The only witnesses present at the execution of the Platt-Campbell transactions all testified Mr. Platt was then mentally competent. Mrs. Gantner, the notary who took the acknowledgments, and who went with Mr. Haas, the attorney handling the transactions, to the Platt home, testified that Mr. Platt greeted Mr. Haas; that Mr. Platt and Mr. Haas talked quite a little; that Mr. Haas read the deed to Mr. Platt; that Mr. Platt said he wanted to sign it so his wife would not have any trouble if anything happened to him; and that Mr. and Mrs. Platt signed the deed and witness took their acknowledgments. Mr. Haas testified Mr. Platt's "mind and memory seemed perfectly clear;" "as far as his mentality is concerned, he was a perfectly normal man on the 11th of October;" "yes, he knew what he was doing."

Mr. Haas was respondents' witness. Respondents stand sponsors for his credibility. He was consistent throughout that at the time Mr. Platt was mentally competent. In the absence of countervailing testimony respondents may not successfully invite this court to disregard his evidence. [Manchester Bank v. Harrington (Mo.), 199 S. W. 242, 248(3); Rodan v. St. Louis Transit Co., 207 Mo. 392, 408, 105 S. W. 1061, 1066.]

Bross v. Rogers (Mo.), 187 S. W. 38, 39(3), states: "It is impossible to view the circumstances pointed out by appellant, as carrying the proof-power prescribed by law to set aside a deed or other solemn instrument in equity. In such circumstances, whatever the specific grounds, whether the establishment of a trust or the showing of fraud and deceit in the procuring of a deed, or any other impeaching method, the rule is, without exception, that the proof to justify such action on the part of the court must be so clear, convincing, and complete as to exclude any reasonable doubt in the mind of the chancellor." [See also Stubblefield v. Husband, 341 Mo. 38, 47, 106 S. W. (2d) 419, 423(3); Robinson v. Field, 342 Mo. 778, 117 S. W. (2d) 308, 315(9); 12 C. J. S., p. 1060, sec. 71; 9 C. J., p. 1254, sec. 195.]

We are of the opinion the preponderance, if not all, of the testimony having probative value established Mr. Platt's mental capacity

to execute the Platt-Campbell deed. Dr. Schoetter's testimony does not aid respondents. He not only refused to express his opinion on Mr. Platt's mental condition on the day in question, but testified Mr. Platt had his lucid moments, which he supplemented with the statement "there are lucid moments, even under heavy narcotics." The probative value of Pearl Ludwig's testimony was diminished by her testimony that her father was not delirious every day; that she did not recall his condition on October 11, 1935; and by Dr. Schoetter's testimony with respect to "lucid moments." Mrs. Ludwig said she was present only when she administered narcotics to her father. This witness had a tendency to drift away from the question. She was a lay witness. Her conclusion as to mental incompetency, to possess probative value, had to be supported by facts inconsistent with mental capacity [Nute v. Fry, 341 Mo. 1138, 1144(1), 111 S. W. (2d) 84, 87(1, 2)]. She did not claim to and did not, so far as the record discloses, possess the necessary testimonial qualifications for an expert witness on the effect of narcotics on the human mind. She testified to facts warranting her stated conclusion that at times her father was mentally incapacitated, delirious, but she testified to no fact upon which to substantiate her conclusion as a lay witness (reading her testimony in the most favorable light to respondents) that "he really wasn't right and didn't know anything" on or after October 11, 1935. Any permissible inference to be drawn from the testimony of these witnesses that Mr. Platt did not possess sufficient mentality as of the time of the transactions to understand their nature and effect is destroyed by respondents' witness Haas' testimony that Mr. Platt was normal mentally on October 11, 1935, at the time he executed the Platt-Campbell deed. His testimony is direct and covers the exact time involved. It stands uncontradicted by testimony of equal probative value, and is corroborated by appellants' witnesses.

We, therefore, reverse the judgment *nisi*, with directions to dismiss respondents' bill. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.