FRANK H. LEE ET AL. v. VIRGINIA ULLERY ET AL., Appellants, MARION LEE ET AL., Defendants.—140 S. W. (2d) 5.

Division One, May 7, 1940.

*David E. Blair, Ray Bond, R. A. Mooneyham, Spencer & Spencer* and *Burton W. Arnold* for appellants.

238

*Kelsey Norman, R. H. Davis, R. A. Pearson, Alfred K. Lee* and *Henry Warten* for respondents.

DALTON, C.—This is a will contest. Plaintiffs seek to set aside an alleged will of Martin W. Lee dated January 18, 1934. A trial was had to a jury; a verdict was returned against the alleged will; and judgment was entered thereon. A motion for new trial was filed and overruled, and proponents appealed.

Lee died January 25, 1934, one week after the execution of the alleged will. The petition alleges, and it is conceded, that he died seized and possessed of real and personal property; and that he

left surviving him no wife or children. The will names Charles W. Lee, a brother, as principal beneficiary, while other brothers and a number of nieces and nephews are not provided for. Frank Lee, a brother, and certain beneficiaries of an earlier will, filed this suit.

The petition is in two counts. The first count seeks to have the alleged will of January 18, 1934, declared not to be the will of Martin W. Lee, and the second count seeks to have an earlier writing established as his last will. A demurrer to the evidence on the second count was sustained, since there was a failure to show that probate of the earlier document had been refused.

The issues joined on the first count were as to (1) mental incompetency to make a will and (2) the exercise of undue influence by Charles W. Lee. Both issues were submitted to the jury. No complaint is made as to the instructions.

Appellants, intending to present the sole issue as to the competency, relevancy and materiality of certain evidence offered by the contestants on the issue of mental incompetency, have expressly omitted the part of the pleadings and evidence dealing with the issue of undue influence and all of the instructions. The bill of exceptions discloses that a prima facie case was made by the proponents of the will of January 18, 1934, by offering in evidence the alleged will, proof of its probate in common form, and certain testimony as to the due execution of the alleged will. The contestants to sustain the issues on their part offered some forty witnesses. Twenty-eight of these, who were lay witnesses, testified that they had known Martin W. Lee over a period of years; that they had seen him frequently during the last few years of his life; that during the last few months of his life, and prior to the execution of the said will, they had noticed a change in his mental condition. These witnesses testified that, in their opinion, the said Martin W. Lee was insane at and before the date of the execution of the alleged will. The questions by which this evidence was elicited, were objected to, and exceptions saved as hereinafter stated.

Appellants' abstract for the most part omits all of the cross-examination of these witnesses. It omits all of the rebuttal evidence of proponents, and all of the medical testimony as to the mental incompetency of Martin W. Lee. It presents only a brief outline of the other evidence of contestants.

The abstract shows that the first time the question of the admission of the disputed evidence arose, was while witness Allie Lee was on the stand. She testified that she was the wife of Frank Lee, a brother of the deceased, and that she had known the deceased about 37 years. She detailed her association with him. It is unnecessary to repeat the evidence here except to say that the witness and deceased had been closely associated over a long period of years. At different times the deceased and his wife had made their home with the witness and

her husband. At other times the deceased resided in the same community, so that they were closely associated. The witness was also closely associated with the deceased during the closing period of his life. The record is as follows:

"Q. Up until the time he was taken to the hospital did you notice any change in his mental condition, and if so, when did you notice such a change?

"By Mr. BLAIR: Object to that, for the reason she is a lay witness, and not qualified to testify without first detailing facts and circumstances upon which the testimony is based.

"By the COURT: I am permitting it from the showing of her long continued knowledge and acquaintance and relationship with him, following those authorities in this State that support that ruling. They are both ways; and I will overrule your objection, and allow you an exception.

(Exception saved.)

"By Mr. BOND: The objection should be, object to the testimony, for the reason a lay witness is not permitted to testify a person is of unsound mind without detailing the facts and circumstances upon which the opinion is based. That is the objection. . . .

"By the COURT: Overruled.

(Exception saved.)

"Q. (By Mr. NORMAN) I asked you if you noticed any change in his mental condition, and if so, when you noticed that change? A. (BY THE WITNESS) About four or five months before his death.

"Q. Four or five months before his death. I will ask you to tell the jury whether or not, in your opinion, he was sane, or insane, beginning four or five months from the time of his death and up until the time of his death?

"By Mr. BOND: Object to that, for the reason a lay witness is not competent to testify as to whether he was insane, without first stating facts upon which the opinion was based. Even then, it is a question for the Court.

"By the COURT: I am, in this case, following the other line of decisions. They are both ways; and I am following the others. I may be in error. I will permit it, and allow you an exception.

(Exception saved.)

"Q. (By Mr. NORMAN) I will ask you this question: Beginning back four months, or approximately that, before his death, and up to the time of his death, whether, in your opinion, he was sane, or insane?

"By Mr. BOND: We make the same objection.

"By the COURT: It is practically the same question. The same ruling. You may answer.

(Exception saved.)

"A. By the WITNESS) He was not in his right mind.

"Q. (By Mr. Norman) That is not the question, Mrs. Lee.

"A. He was insane. . . ."

To further illustrate the manner in which the challenged evidence came into the record we set out the testimony of two other witnesses.

Direct examination of Vernie Hine by Mr. Norman:

"I live in Joplin, have known Martin Lee for twenty-five or twenty-seven years, and saw him many, many times; I visited him in his home; I knew him intimately; I knew him during the last four or five or six months of his life.

"Q. Tell the jury whether or not you noticed any change in his mental condition?

"By Mr. Bond: We object. The witness has not made the proper basis—has not laid the proper foundation. He is a lay witness.

"By the Court: Same ruling. Same exception allowed.

(Exceptions saved.)

"Q. (By Mr. Norman) Did you notice any change in his mental condition? A. Yes, sir.

"Q. I will ask you when you first noticed that change—in your best opinion? A. Three or four months before his death.

"Q. From what you observed, I will ask you to tell if he was sane or insane?

"By Mr. Bond: We object, for the reason he is a lay witness. No testimony he would give would have a proper basis. He does not give the facts and circumstances on which he bases his testimony.

"By the Court: His long acquaintance would give him the right. I am overruling your objection, and allowing the exception.

(Exceptions saved.)

"A. (By the Witness) He was a crazy man, gentlemen, the last years of his life. . . . He was insane."

Direct examination of W. J. Narrell by Mr. Norman:

"I knew Martin Lee during the last four or five years of his life, and had occasion to see and converse with him once or twice a month; sometimes less or sometimes more, at the hotel; I was well acquainted with him.

"Q. I will ask you if you noticed any change in his mental condition?

"By Mr. Bond: Same objection. He is a lay witness, and no foundation has been laid.

"By the Court: Same ruling, and same exception allowed.

(Exceptions saved.)

"A. (By the Witness) I did.

"Q. (By Mr. Norman) Tell the jury whether or not Martin Lee was sane, or insane?

"By Mr. Bond: Object to that. He is not qualified to state as to the mentality of Martin Lee.

"By the Court: Same ruling.

(Exceptions saved.)

"Q. (By Mr. NORMAN) Was he sane, or insane? A. (By the WITNESS) Insane."

It is unnecessary to name the other witnesses, or to review their testimony. The illustrations are sufficient. In any case the error assigned does not require a separate consideration of the testimony of each of the twenty-eight witnesses whose opinion testimony is questioned. The testimony of all the said witnesses falls into one of the two classes referred to in respondents' statement. Either the witnesses stated no facts as a basis for their opinion or stated facts after expressing an opinion that Lee was insane.

Respondents' statement is as follows: "A host of witnesses, every one of whom were . . . intimate acquaintances of Martin, testified that, in their opinion, Martin was insane at the time he made the will. Some testified, in their opinion, that he was insane, stating that they could not better explain his condition, because that was the only way they knew how to describe the change in his condition that occurred in the latter part of their long acquaintance with and observation of him. *These did not state any facts upon which they based their opinion, other than the fact of their long and intimate acquaintance with and observation of him.* These were in themselves facts. Those who did state the facts upon which their opinions were based, first stated the great length of time they had known and observed, and been intimately acquainted with Martin, which made them know that from his appearance and conduct during the last few months of his life, that he was insane. *Then they stated the facts upon which they based their opinions.*" (All italics ours.)

Counsel for proponents (appellants) at all times took the position that these lay witnesses were not qualified to answer the questions about changes in mental condition and insisted that no proper foundation had been laid for a lay witness to testify as to mental condition. Objections were made to all questions relative to Lee being insane during the last few months or years of his life. Proponents contended that the witnesses were lay witnesses, not qualified to give an opinion as to mental condition, and had not detailed the facts and circumstances upon which any such opinion as to insanity could be based. They insisted that even then, the admissibility of an opinion, would be subject to the control of the court based upon the facts detailed. The objections were overruled on the theory that because of the long acquaintance of the witnesses with the deceased any further statement of facts was unnecessary. Error is assigned upon the court's admission of the testimony of these lay witnesses to the effect that, in the opinion of said lay witnesses, Martin W. Lee was insane and prior to the execution of the alleged will. The sole question presented on this appeal is relative to the competency of the opinion evidence of these numerous witnesses.

■ We are first confronted with respondents' motion to dismiss the appeal in this case. The grounds stated are (1) that appellants' abstract of the record does not set out so much of the record as is necessary to a complete understanding of all questions presented (the cross-examination of the witnesses, all instructions, and the pleadings and evidence as to undue influence, being omitted), and (2) that appellants' brief fails to contain a statement of the grounds upon which the jurisdiction of this court is invoked, as required by the recent amendment to rule 15 of this court.

Respondents insist that this court should have before it the entire testimony of all of the twenty-eight witnesses whose opinion testimony is challenged in order for the court to determine whether error was committed and whether such error was prejudicial. Respondents say that appellants' abstract of the record gives an incomplete and garbled slant on the evidence and proceedings at the trial and that the mental and physical state of the deceased was a factor to be considered in connection with the issue of undue influence; that the evidence showing deceased's impaired mentality was competent on that issue; and that a complete record was required.

. Appellants' abstract of the record covers 101 pages and, because the prejudicial character of the error assigned is so obvious, we think it is sufficient under the circumstances for a determination of the question presented. The abstract reflects a record in entire harmony with respondents' statement as to the opinion testimony of these witnesses, and the manner in which such testimony was presented.

Appellants admit fault in failing to include a statement of the grounds upon which the jurisdiction of this court is invoked. They allege oversight and inadvertance on the part of counsel in failing to observe the amendment to our rule 15, as printed in the docket of this court for the September Term, 1939 (January Call, 1940). They point out that the petition set out in the abstract of the record, and to which petition reference is made in the brief, shows that the estate of the testator "consists of real and personal property of the value of $15,000 or more," and that the jurisdiction of the court is unquestioned. The will, as offered in evidence, also purports to devise real estate; and, that title to real estate is involved, is conceded by appellants and respondents.

■ The amendment to our rule 15 was made for the benefit of this court and to facilitate the disposition of appeals on the part of litigants. The amendment has resulted in many cases, not properly in this court, being transferred to the proper tribunal without argument and submission here, and without further loss of time. It is an important rule to be observed. The rule, as amended, appears on page 1 of the docket for the call at which this case was presented and argued. The amendment should have been observed and the rule complied with. The penalty, however, provided for the violation

of the rule is a very harsh one. In view of the recent adoption of the amendment, we do not feel that the penalty should be applied under the facts in this case. The motion to dismiss the appeal is overruled.

We must now consider the error assigned concerning the admission of the opinion evidence as to insanity. One of the issues created by the pleadings and submitted to the jury was as to the testamentary capacity of Martin W. Lee, at the time of the execution of the alleged will. Did he have the mental capacity to make a will? Was the derangement, if any, of his mental faculties such as to render him unable to transact his ordinary business affairs and make him incapable of appreciating the extent of his property, and the natural objects of his bounty? Was he capable of rationally considering the extent of his property and determining to whom he wanted to give it? · [Crum v. Crum, 231 Mo. 626, 638, 132 S. W. 1070; Nute v. Fry, 341 Mo. 1138, 111 S. W. (2d) 84, 87; Stevens v. Meadows, 340 Mo. 252, 100 S. W. (2d) 281, 287.]

The rule in this State is that a lay witness is not competent to testify that, in the opinion of such witness, a person is of unsound mind or insane, without first relating the facts upon which such opinion is based; and, when the facts have been stated by such lay witness, unless such facts are inconsistent with such person's sanity, the opinion of such lay witness that the person under consideration was insane or of unsound mind, is not admissible in evidence and may not be received. [Clark v. Commerce Trust Co., 333 Mo. 243, 62 S. W. (2d) 874, 882; Fields v. Luck, 335 Mo. 765, 74 S. W. (2d) 35, 45; Berkemeier v. Reller (Mo.), 37 S. W. (2d) 430, 431; Nute v. Fry, supra; Stevens v. Meadows, supra; Platt v. Platt, 343 Mo. 745, 123 S. W. (2d) 54, 56; Loehr v. Starke, 332 Mo. 131, 56 S. W. (2d) 772, 775.]

In the case of Clark v. Commerce Trust Co., supra (333 Mo. 243, 62 S. W. (2d) 874, 882), this court said: ''Error is also assigned to the trial court in permitting lay witnesses to testify that testatrix was of unsound mind, without requiring the witnesses to relate facts upon which to base such an opinion. The rule is well settled that a lay witness must, before expressing an opinion, relate the facts upon which the opinion of insanity is based. The facts related must be inconsistent with sanity, taking into consideration the surrounding circumstances and the person whose sanity is questioned . . . On a retrial of this case this rule should be followed.'' In the case of Fields v. Luck, supra (335 Mo. 765, 74 S. W. (2d) 35, 45), this court said: ''Lay witnesses should not be allowed to give their opinions that a testator was of unsound mind when they do not, as a condition precedent, testify to facts, of their own knowledge, which are inconsistent with sanity.''

In this connection it has repeatedly been determined that evidence of sickness, old age, peculiarities, eccentricities in dress or

oddities of habit, forgetfulness, inability to recognize friends, feebleness resulting from illness, and other facts or circumstances not inconsistent with the ability to understand the ordinary affairs of life, comprehend the nature and extent of one's property and the natural objects of his bounty, and which are not inconsistent with sanity, cannot be used as a basis for the opinion testimony of a lay witness that a person is of unsound mind or insane. [Berkemeier v. Reller, 317 Mo. 614, 296 S. W. 739, 753; Loehr v. Starke, supra; Smarr v. Smarr, 319 Mo. 1153, 6 S. W. (2d) 860, 864; Nute v. Fry, supra.]

This rule places the matter of the qualification of a witness to express an opinion, and the facts upon which such an opinion may properly be based, under the supervision of the court. The rule protects the parties in interest, the jurors and the court, against mere conclusions of lay witnesses as to mental incompetency, which are based upon facts and circumstances not directly connected with and which have no direct bearing upon a person's ability to transact his ordinary business affairs or his ability to understand the extent of his property and determine the natural and proper objects of his bounty. The reason for the rule is that the opinion of a lay witness, as to the insanity of the person whose mental condition is under investigation, has no weight or value in this type of case unless such opinion is founded upon facts, within the knowledge of such witness, which are inconsistent with sanity. [Platt v. Platt, supra; Loehr v. Starke, supra; Frohman v. Lowenstein, 303 Mo. 339, 260 S. W. 460, 463.]

There is a further rule, long recognized in this State, that in order to testify that a person is sane the lay witness is not required to give the facts upon which such opinion is based. [Berkemeier v. Reller, 317 Mo. 614, 296 S. W. 739, 753; Loehr v. Starke, 332 Mo. 131, 56 S. W. (2d) 772, 775; Smarr v. Smarr, 319 Mo. 1153, 6 S. W. (2d) 860, 864; Nute v. Fry, supra; Buchholz v. Cunningham, 340 Mo. 302, 100 S. W. (2d) 446, 449; Berkemeier v. Reller (Mo.), 37 S. W. (2d) 430, 431; State v. Liolios, 285 Mo. 1, 13, 225 S. W. 941.]

In the case of Kaechelen v. Barringer (Mo.), 19 S. W. (2d) 1033, 1037, this court said: "The rule is well settled that, ordinarily, before a lay witness will be permitted to give his opinion that a person is of unsound mind, he must first detail the facts upon which he bases such opinion, but if he expresses an opinion that such person is of sound mind, he is not required to detail the facts upon which he founds his opinion. The reason for the rule is obvious. An opinion that a person is of unsound mind is based upon abnormal or unnatural acts and conduct of such person, while an opinion of soundness of mind is founded upon the absence of such acts and conduct."

It is rather difficult to state respondents' position. They insist the opinion evidence was properly admitted, since the witnesses had known and observed Martin W. Lee for many years, and suggest that

its value could be tested by cross-examination. In their brief respondents say: "Respondents do not challenge the rule that, ordinarily, a lay witness is not competent to give his opinion that a person is of unsound mind without first detailing the facts upon which he bases such opinion. Moreover, the testimony of the lay witnesses complained of on this appeal does not run counter to the rule . . . The witnesses were permitted to express their opinion that Martin W. Lee was insane because they had known him intimately for a long period of years. Knowing Martin W. Lee for a long period of years, they spoke from their association and observation of him, which, itself has been ruled competent evidence of the fact of mental incapacity."

Respondents further insist that there is an exception to the general rule (requiring a statement of facts inconsistent with mental competency to make a will before letting the witness express an opinion as to incompetency or insanity) where the witness has had a long personal association and acquaintance, and intimate knowledge of, the person whose competency is under investigation; (2) that, where the witness states facts showing a close association with and knowledge of such person for a long period of time, there is a sufficient compliance with the rule requiring the witness to make a statement of the facts upon which he bases his opinion, and that such facts were stated by respondents' witnesses in advance of giving an opinion that Martin W. Lee was insane; (3) that the opinions of such witnesses as to insanity are competent and admissible for the same reasons that opinions as to sanity are admissible (respondents in effect urge that such opinions may not be excluded merely because, in advance of giving an opinion as to insanity or incompetency, the witness does not detail facts which are inconsistent with the mental competency of the person under investigation) and (4) that the quotation from the case of Clark v. Commerce Trust Co., supra, states the "minority rule."

Respondents rely primarily upon the opinion of this court in Carpenter v. Kendrick, 299 Mo. 95, 112, 252 S. W. 646. That was a case in equity to set aside a note and deed of trust on account of fraud and undue influence and want of mental capacity of the maker, one Alice Powell. According to the opinion (l. c. 103) certain "life-long friends, neighbors and acquaintances, . . . testified (over defendants' objections that they were not qualified to state their opinion) that Alice Powell did not have mental capacity sufficient to transact important business." The court said (l. c. 112): "If said Alice Powell did not have sufficient mental capacity to understand the nature of the transaction it was void for that reason. The plaintiffs' evidence tended to show that she did not, which was disputed by that of the defendants. It was mostly oral testimony, the weight of it largely depended upon the character, intelligence, opportunity for

observation and various qualifications of the witnesses, which the lower court was in a better position to determine than an appellate court, which has no opportunity to see and hear the witnesses and observe their demeanor on the stand. . . . Appellants, however, claim that the witnesses for plaintiffs gave no sufficient ground for their opinion as to mental incapacity of said Alice Powell to warrant the setting aside of said note and deed of trust; that they did not testify to any insane act or acts to show a weak mind on her part. We do not agree to this suggestion. They all knew her intimately from girlhood, and they spoke from their association and observation of her, which we have ruled is competent evidence of the fact. Indeed, they spoke of her mental condition more, as a matter of fact, than as merely an opinion. The admissibility and weight of such testimony is too well established to require the citation of authority . . ."

It is apparent from said opinion that the court was not considering error in the admission of the evidence, but only its weight and value. Nor does it appear that the witnesses had not made a statement of the facts upon which they based their opinions, and prior to giving their opinions. Apparently the objection referred to was that the witnesses had not stated sufficient facts inconsistent with mental competency to qualify and be permitted to express an opinion that Alice Powell did not have sufficient mental capacity to transact business. The cause was in equity and the parties did not even brief the question of the admissibility of the evidence. However, if said opinion does hold that lay witnesses, because of their long acquaintance and close association with the person whose mental condition is under investigation, may express an opinion as to mental incompetency or insanity of such person, and without first, as a condition precedent, stating the facts upon which said opinion is based, and stating facts which are inconsistent with sanity, then said opinion has been over-ruled by implication by a long line of cases to the contrary.

Respondents, in support of the several theories advanced by them, to support the admission of said opinion testimony, cite the following and many other authorities: Connecticut Mutual Life Ins. Co. v. Lathrop, 11 U. S. 612, 620 (opinions as expressing inferences based on observations which cannot be communicated in words to others); Kirchof v. United Railways Co., 155 Mo. App. 70, 83, 135 S. W. 98 (opinion as to plaintiff's inability to do manual labor); State v. Buchler, 103 Mo. 203, 206, 15 S. W. 331 (opinion that there was expression of anger and hate on defendant's countenance); Partello v. Mo. Pac. Railroad Co., 217 Mo. 645, 655, 117 S. W. 1138 (opinion as to apparent health of plaintiff before her injury) and cases therein cited; Rearden v. St. L. & S. F. Railroad Co., 215 Mo. 105, 135, 114 S. W. 961 (opinion as to plaintiff's health and physical condition); Fulton v. Metropolitan St. Ry. Co., 125 Mo. App. 239, 244-248,

102 S. W. 47 (opinion and impression on witness' mind—concerning changes in plaintiff's appearance and activity after her injury, as an evidential fact for jury); Sullivan v. Union Electric Light & Power Co., 331 Mo. 1055, 56 S. W. (2d) 97, 104 (opinion based on facts which ordinary witness could understand but which could not be stated or described sufficiently for the jury); Scanlon v. Kansas City, 325 Mo. 125, 149, 28 S. W. (2d) 84, 95 (witness' inferences drawn from adequate data as evidence); Heinbach v. Heinbach, 274 Mo. 301, 316, 202 S. W. 1123; 22 C. J., pp. 604, 609, secs. 698, 699, 700, 701. None of the authorities cited support the positions taken by respondents in this case.

█ This court has consistently made *two* specific requirements as a condition precedent to the admission of opinion testimony as to the insanity or mental incompetency of the person whose mental condition is under consideration. They are (1) that the witness has had an opportunity to observe, and know the mental condition of such person (the extent of such opportunity, except for sufficient acquaintance to qualify, going to the weight and value of the witnesses testimony), and, (2) that the witness shall first state the facts upon which such opinion is based, and unless such facts as stated by the witness are inconsistent with sanity and mental competency, the witness shall not give such opinion. [Clark v. Commerce Trust Co., supra; Stevens v. Meadows, supra; Nute v. Fry, supra; Platt v. Platt, supra; Hunter v. Briggs, 254 Mo. 28, 54, 162 S. W. 204; State v. Speyer, 194 Mo. 459, 468, 469, 91 S. W. 1075; Sharp v. The Kansas City Cable Ry. Co., 114 Mo. 94, 100, 20 S. W. 93; Appleby v. Brock, 76 Mo. 314, 317; Baldwin v. State, 12 Mo. 223, 234.]

█ Respondents insist that there is no reversible error; that the testimony showing mental incapacity is overwhelming; and that a retrial is certain to result in a verdict against the will. Some of the witnesses as to insanity, however, did not attempt to state any facts inconsistent with sanity; and many others who attempted to state facts, and subsequent to expressing an opinion as to insanity, failed to state any facts inconsistent with sanity. They stated other opinions, conclusions and facts. The facts stated were not inconsistent with testamentary capacity. Some of these witnesses, although acquainted with the deceased over a long period of years, had had very limited contact with him, since they resided in other parts of the State.

We think that the prejudicial effect of the questioned evidence is apparent. Much of it was not only definitely prejudicial but it was valueless. The poison could not be withdrawn by mere cross-examination; and to force proponents to assume the burden of destroying its prejudicial effect by mere cross-examination was to place upon them a burden which the law does not require. The damage was done by the admission of such evidence and in permitting it to go to the jury.

Proponents were entitled to have the essential issue of testamentary capacity tried and submitted upon competent evidence. They were entitled to have the preliminary facts, upon which the admissibility of such opinion evidence depended, to be presented to and considered by the court before the admission of such opinion evidence. Opinion evidence of lay witnesses as to insanity or mental incompetency, if admitted on the issue of undue influence, is still subject to the above rules. [Clark v. Commerce Trust Co., supra.] We hold that the admission of said evidence, as disclosed by the record in this case, constituted reversible error.

The judgment is reversed and the cause remanded. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.