**Marie R. SEYMOUR, Appellant,**

v.

**Walter J. SEYMOUR, Respondent.**

No. 47783.

Supreme Court of Missouri,
Division No. 1.

Nov. 14, 1960.

Rehearing Denied Dec. 12, 1960.

Gilmore & McClintock, John L. Gilmore, Robert G. McClintock, St. Louis, for appellant.

Willson, Cunningham, McClellan & Gunn, Jerome M. McLaughlin, St. Louis, Vatterott & Shaffar, Glennon R. Vatterott, St. Ann, for respondent.

WESTHUES, Presiding Judge.

This is an action in equity to set aside a deed whereby plaintiff transferred to the defendant her interest in certain real estate in St. Louis County, Missouri. The trial court refused to grant the relief prayed for and the plaintiff appealed.

In 1956, when the deed was signed and acknowledged, plaintiff and defendant were husband and wife. They were married in 1931 and lived in the City of St.

Louis and in St. Louis County, Missouri, until 1951 when they moved to Delray Beach, Florida. Defendant husband was a carpenter when the marriage took place and he followed that occupation for a number of years. About 1944, he engaged in the contracting business and was very successful. The profits derived from the business were deposited in a joint bank account. During the years, real estate was purchased. A large portion of this was located in the 8300 block on Olive Street Road which is in St. Louis County. There were a number of buildings on this land which were rented to retail merchants and also some office space was rented to professional men. Title to all of this property was in the joint names of plaintiff and defendant as husband and wife.

After the parties moved to Florida, the defendant continued in his contracting business. Lots were purchased and houses constructed thereon. Title was, as a rule, placed in the joint names of plaintiff and defendant. A home was purchased and it, too, was held jointly. The parties adopted a boy who at the time of trial was about 12 years old. He was their only child. About the year 1955, differences arose between plaintiff and the defendant which culminated in a separation in the early part of 1956. Much evidence was introduced as to where the fault lay. However, we are not here concerned about that question. Neither are we concerned about a divorce proceeding which the husband instituted in Florida in 1957 and which resulted in a decree in his favor.

In the fall of 1955, plaintiff and defendant began negotiations looking toward a separation and a separation agreement. Each party was represented by a lawyer. The husband's lawyer prepared an agreement which was presented to the wife in the early part of 1956. She refused to sign this agreement. She testified that her principal reason for not signing that contract was that it stated a divorce was contemplated. She testified that she always had hopes of a reconciliation and did not want a divorce. Plaintiff's father who lived in St. Louis consulted a St. Louis attorney who recommended that he see a lawyer by the name of R. Bruce Jones of West Palm Beach, Florida. William Wehking, the father, thereupon went to Florida and conferred with Mr. Jones. Thereafter, Mr. Jones represented plaintiff in the negotiations with the husband about a separation agreement.

A separation agreement was prepared by Jones and this was signed by both plaintiff and defendant. This agreement specifically and in detail set forth the property that was to be transferred to plaintiff. It was stated in the contract that Lots 27, 28, 29, 30, 31, 32, and 33 of Block 31 which was located in the 8300 block on Olive Street Road were to be transferred to plaintiff. Plaintiff stated this property was worth about $75,000. The monthly rental derived from the property amounted to about $500 or $600. The contract further provided that $20,000 was to be paid plaintiff when the home in Florida was sold; that a portion of the furniture was to be delivered to plaintiff. Defendant also agreed to purchase a new car for his wife, plus a new clothes washer, a dryer, a stove, and a refrigerator. This separation agreement provided for a trust fund of $32,000 to be set up by the defendant for the purpose of producing an income for the benefit of the son. It will be noticed that the separation agreement minutely set forth the property and articles that were to go to plaintiff.

The property that was not mentioned specifically in the separation agreement and which is the subject matter of this case included Lots 11, 14, 24, 25, and 34 of Block 31 which are also located in the 8300 block on Olive Street Road and Lot 3 in Block 2 of Melrose Park, all in St. Louis County, Missouri.

The negotiations which resulted in the separation agreement were had in February and March, 1956. Plaintiff and the son went to St. Louis before the contract was

signed. The contract together with other papers (including a deed to the lots in question whereby plaintiff and her husband transferred the lots in question to a John H. Adams who in turn conveyed them to the defendant husband) were sent to plaintiff by her attorney Jones. Defendant signed the agreement and the deed in Florida on April 25, 1956. Plaintiff signed the agreement and the deed; plaintiff's acknowledgment on the deed was dated June 1, 1956. After plaintiff executed the instruments, she returned them to her attorney Jones in Florida.

In this action, plaintiff did not make any complaint that she did not receive all that was provided for in the separation agreement. She stated that her husband had sent her a trust declaration and the money as agreed to provide a trust fund for the son but that she returned that with a letter to her husband stating that she trusted him to make provision for the son. She testified that she purchased a home in St. Louis County with the $20,000 she received as her share from the sale of the Florida home; that the purchase price of the St. Louis County home was $23,000 and that her husband sent her the $3,000 to complete the payment. Plaintiff and defendant continued to communicate by letter and telephone after their separation and plaintiff asked defendant's advice about renting her property on Olive Street Road. Plaintiff collected the rents on the property conveyed to her beginning in August, 1956. She at no time collected any rents on the property conveyed to the husband. She stated, "I assumed it was going to Mr. Seymour." Plaintiff testified that some time after she learned that defendant had obtained a divorce she made an investigation as to what property she owned; that she then learned for the first time that she had executed a deed conveying the property in question to her husband. This was in the spring of 1958.

Plaintiff contends that the separation agreement did not provide for a transfer of the property in question to her husband. It is argued that therefore it was contemplated that title to the lots on Olive Street Road, which are the subject matter of this lawsuit, was to continue to be held jointly. The terms of the contract refute such a contention. In the forepart of the agreement, we find the following provisions:

"Whereas, it is the desire and intent of the parties that this instrument shall set forth the terms of a complete, full and final settlement of all property rights between the parties, which terms shall be incorporated in and be made a part of any decree of divorce that may be entered in a divorce action between the parties hereto; * * *."

Paragraph 8 of the agreement provides that "In consideration of the transfers above provided for, Wife will waive, release and discharge all right, title and interest in and to the property and estate of the Husband, real, personal and mixed, which she now has or may hereafter have and will execute, acknowledge and deliver any further instruments necessary or proper for such purposes, or to accomplish the intent of this agreement. As a part of the consideration for this agreement, Wife has executed and has renounced her interest in said property held in the name of Husband, which deed of conveyance bears the same date of this agreement and which deed names as grantee, John H. Adams, P.O. Box 1125, Delray Beach, Florida. Wife will release and discharge Husband of any and all claims and demands of any character based on or arising out of the marital status, and will assume financial responsibility for the care, control and support of the minor child."

The contention that the title to the lots in question was to remain in the joint names of plaintiff and defendant runs contra to the express terms of the contract where it is stated that "this instrument shall set forth the terms of *a complete, full and final settlement of all property rights between the parties,* * * *." (Emphasis

supplied.). Note further that, in paragraph 8 quoted supra, plaintiff agreed to "waive, release and discharge all right, title and interest in and to the property and estate of the Husband, real, personal and mixed, which she now has or may hereafter have and *will execute, acknowledge and deliver any further instruments necessary or proper for such purposes,* or to accomplish the intent of this agreement." (Emphasis supplied.)

Plaintiff testified that she read the separation contract but did not read the deeds that she signed and acknowledged in June, 1956; that she assumed she was signing the deed (Exhibit D) described in the contract conveying property to John H. Adams and that such deed conveyed property located in Florida. Plaintiff did sign such a deed wherein her husband joined on June 1, 1956, conveying property in Florida to John H. Adams who in turn conveyed the title to the defendant. However, we note that plaintiff had on December 8, 1955, conveyed by deed all of the lots described in Exhibit D and more to her husband by a deed directly from her to defendant. No explanation was made why a second deed was executed. We surmise that perhaps it was thought that from a legal standpoint it was better to convey title to a third party and have that party convey the title to the defendant. The deed sought to be set aside in this suit (Exhibit F) also fits the description mentioned in the contract in that it was dated April 25, signed and acknowledged on June 1, and the grantee was John H. Adams.

In the brief, under Point II, plaintiff states that "Appellant executed Plaintiff's Exhibit F without having read it, without knowledge of the contents thereof, and without any intention to convey the property described therein, and appellant received no consideration for the conveyance. Therefore appellant is entitled to have the conveyance set aside. Colquitt v. Lowe, Mo.Sup.; 184 S.W.2d 420; Cook v. Branine, 341 Mo. 273, 107 S.W.2d 28; Mentzer v. Mentzer, 325 Mo. 941, 30 S.W.2d 146;

Walton v. Van Camp, Mo.Sup., 283 S.W.2d 493."

■ The contention that plaintiff received no consideration for conveying the lots in question to defendant is without merit. As the above statement of facts showed, plaintiff received approximately $100,000 in property and cash as her absolute property. That certainly was a valuable consideration. In the case of Cook v. Branine, supra, no money or property was given as a consideration. Defendant's claim of consideration in that case was that she had saved her brother's life (the plaintiff's) by advising him not to commit suicide and taking a bottle of chloroform from him; that she advised her brother to live an upright life. It is apparent that the case is not in point. A conveyance whereby a wife becomes the sole owner of property held by the wife and the husband as an estate by the entirety is supported by a valuable consideration. 17 C. J.S. Contracts § 76, p. 428.

The trial court made a finding of facts and conclusions of law and entered a decree denying plaintiff any relief. In the finding of facts and conclusions of law, the court stated, "It is apparent from the conduct of the parties and their respective attorneys, that at the time plaintiff executed plaintiff's Exhibit F it was intended that plaintiff divest herself of her interest in the subject property pursuant to the Separation Agreement." The court further found that plaintiff's attorney and plaintiff had knowledge of the contents and the effect of the deed sought to be set aside and that the execution of the deed was made pursuant to the Separation Agreement. The trial court further found that the evidence failed to support a finding that any fraud was perpetrated upon plaintiff.

■ We find ourselves in accord with the findings of the trial court. In Walton v. Van Camp, supra, 283 S.W.2d loc. cit. 500(11), cited by plaintiff, it is stated that "The cancellation of a deed is the exercise

of the most extraordinary power of a court of equity and this power ought not to be exercised except when clearly justified from a consideration of all the evidence in the case. Platt v. Platt, 343 Mo. 745, 123 S.W.2d 54; Hamilton v. Steininger, 350 Mo. 698, 168 S.W.2d 59." See also 12 C.J.S. Cancellation of Instruments § 71, pp. 1060–1068.

The judgment of the trial court is hereby affirmed.

All concur.